JEROME H. SHEIP COMPANY, et al., *Appellants*, v. ERNEST AMOS, as Comptroller of the State of Florida, *Appellee*.

En Banc.

Opinion filed October 17, 1930.

Petition for rehearing denied November 26, 1930.

864

*Watson, Pasco & Brown,* and *R. Don McLeod, Jr.,* for Appellants;

*Fred H. Davis,* Attorney General, and *H. E. Carter,* Assistant Attorney General, for Appellee.

STRUM, J.—The purpose of this suit is to determine the validity of the tax imposed by Chap. 13756, Acts of 1929 (page 456) upon the storage of certain petroleum products.

To a bill of complaint seeking to enjoin collection of the tax by the Comptroller, a general demurrer was sustained and injunctive relief denied, from which order this appeal is taken.

In testing the validity of, as well as in constructing a statute, resort may be had if necessary to the history of the legislation, the public history of the times in which it was passed, and it may be compared with cognate laws in order to determine its purpose, meaning and effect as an aid in determining its validity. Aldridge v. Williams, 3

How. (U. S.) 9, 11 L. Ed. 469; U. S. V. Trans-Missouri Freight Asso., 166 U. S. 318; 41 L. Ed. 1019; Texas & P. R. Co. v. I. C. C., 162 U. S. 218, 40 L. Ed. 947. See also Amos v. Mathews, 126 So. R. 308, 316; 25 R. C. L. 1015.

Chapters 14575 and 14573, Acts of 1929, impose an excise aggregating six cents per gallon upon the sale of gasoline, such tax to be paid to the State by the dealer. The tax imposed upon that privilege is impotent when gasoline is purchased in interstate commerce and stored in this State by the owner for his own future use. Since there is no sale which the State could tax, gasoline so purchased and stored—though mingled with the common mass of property in this State and though enjoying the protection afforded by the laws of this State—would escape payment of its proportion of the public revenue designed to be derived from the use of gasoline in this State.

Chap 13756 provides in effect that in addition to a license tax of five dollars, every person, firm, corporation, municipality, county or subdivision thereof shall pay a tax of five cents per gallon (or such amount as will correspond to the sales tax) for every gallon of gasoline or like products of petroleum "which shall have been shipped or imported into this State from any other state or foreign country, and which shall thereafter for a period of twenty-four hours after it loses its interstate character as a shipment of interstate commerce, be kept in storage in this State to be used and consumed in this State," and with reference to which no sales tax has been paid. Products in transit through this State in interstate or foreign commerce are exempt, and as to products coming to rest here payment of either the sales tax or the storage tax exonerates from liability for the other, only one of these two taxes being collected.

Chap. 13756, *supra,* now under consideration, is complementary to Chapters 14575 and 14573, *supra,* in effectuating the State's public policy as to the revenue to be derived from the use of gasoline in this State. While passed primarily for revenue purposes, and to forestall evasion of the sales tax (See Texas Co. v. Brown, 258 U. S. 466, 481; 66 L. Ed. 721, 728), the statute is also regulatory in effect. The storage of gasoline in large quantities is inimical to public safety. If no financial advantage can be gained from storing it, one of the most substantial inducements to store it is removed. That result is accomplished by imposing a storage tax equivalent to the sales tax, thus tending to curb the practice of storing. See Foster & Creighton v. Graham, 285 S. W. R. 570, 47 A. L. R. 971.

The bill of complaint alleges in substance that complainants buy large quantities of gasoline in tank cars at points beyond the State of Florida at the prevailing market price of $8\frac{1}{2}$ to $12\frac{1}{2}$ cents per gallon, and have the same shipped to them in interstate commerce to their respective places of business in the State of Florida, to be used and consumed in their respective businesses.

Complainants first contend that the tax is a direct property tax, and as such is void because not based upon value nor imposed according to principles of equality and uniformity.

To support that contention, complainants rely largely upon Dawson v. Kentucky Distilleries, 255 U. S. 288, 65 L. Ed. 638. In that case the statute purported to impose upon persons in the business of manufacturing, owning, or storing whiskey, a "license" tax upon every gallon of whiskey "either withdrawn from a bonded warehouse or transported in bond from Kentucky to a point outside that State." The court held that the tax so imposed was a direct

property tax, because its incidents were inconsistent with the essentials of an excise. The court carefully pointed out that because of the incidents prescribed for the operation of that tax, it "is not one imposed upon the business of owning, storing and removing whiskey from bond," or "upon the business or occupation of the warehouseman," because the tax might become payable although the whiskey had not been stored for any appreciable time. It may be conceded, in passing, as true of the tax here under consideration that it is not made to depend upon the length of time the gasoline remains in storage. In the Kentucky Distilleries case, however, the court was influenced in its decision that that tax was not a storage tax by the circumstance that the Kentucky statute was so framed that "a particular lot of whiskey may pass through a dozen bonded warehouses, without one of them being obliged to pay the tax." The court further said: "So long as the whiskey is stored in bond within the State, it is free from tax. One may own and store the whiskey for years in the hope of selling it at a profit, and yet be free from any obligation ever to pay this tax, if, before it is removed from bond within the State, the whiskey is sold to another, or if, while so owned, it is destroyed or forfeited to the government." That vital element is not found in the tax here under consideration. Here, if the storage continues for twenty-four hours after the property loses its interstate character, the tax attaches. As pointed out by the lower court with reference to the tax involved in the Kentucky Distilleries case: "The thing really taxed is the act of the owner in taking his property out of storage into his own possession" for use. * * * "The whole value of the whiskey depends upon the owner's right to get it from the place where the law compelled him to put it and to tax the right is to tax the value." Frieberg v. Dawson, 274 Fed. 420. The essential difference between the

Kentucky tax and the tax now under consideration is that the present act of storing the commodity, which is a species of "use," and not its future withdrawal, which is merely a change in the form of possession not amounting to a taxable "use," is made the criterion of our tax.

This tax is repeatedly referred to in the Act as a license tax, although that fact is not conclusive. It is the substantial effect and operation of the tax, and not its mere designation that controls. Its classification is to be determined by its characteristics, not by its designation. See Amos v. Mathews, 126 So. R. 308; McCray v. U. S., 195 U. S. 27, 49 L. Ed. 78; St. Louis S. W. R. Co. v. Arkansas, 235 U. S. 288; 65 L. Ed. 638.

The factors which determine liability for the gallonage tax are these: The gasoline (or other petroleum products) in question must be (a) imported into this State from another state or foreign country; (b) it must be kept in storage in this State for a period of twenty-four hours after it has lost its identity as a shipment in interstate commerce; (c) it must be thus kept in storage to be used and consumed in this State; (d) it must be gasoline with reference to which no sales tax has been paid.

Factors (a) and (d) determine the general class of gasoline contemplated by the statute; factor (b) determines the specific subject of the tax, namely, the present act of storage; factor (c) limits factor (b) in that the tax is measured by gasoline that is not only kept in storage but which is so kept to be used and consumed in this State. Primarily, liability for the tax arises by reason of the present act of storage, a species of use. Liability for the tax is not dependent upon the future and uncertain act of withdrawal, a mere change in the form of possession, as in the Kentucky Distilleries case, *supra,* nor is it a tax upon consumption, although it is applicable only to the storage of gaso-

line "to be used and consumed" in this state. If gasoline falling within factors (a) and (d) is consumed in this State without being stored, or if it be stored but not to be consumed in this State, the tax apparently would not apply under the terms of the statute. Even though the owner and the storer be the same person, the tax is one which affects the use of gasoline, and is specifically upon the privilege of storage. Storage is a particular use incident to ownership. The owner's privilege of storage is none the less taxable than when storer and owner are different persons.

It, therefore, becomes apparent that the tax is not upon the gasoline itself as property, but is an excise upon the privilege of storing gasoline,—hence "a tax upon licenses" as expressly sanctioned by the Constitution, Article IX, Section 5. See Amos v. Mathews, 126 So. R. 308; Amos v. Gunn, 84 Fla. 285, 94 So. R. 615. The total amount of the tax paid is directly determined by the extent to which a privilege is exercised. See 26 R. C. L. 35, 236. The tax has none of the attributes of an *ad valorem* tax. It is not measured by value and is not laid directly upon the property itself nor does the tax fall upon the owner merely because of ownership. The value of gasoline may fluctuate, as it will, but the amount per gallon of the tax remains constant. The tax is payable regardless of whether the storer is also the owner. It is an excise imposed directly by the Legislature upon a taxable privilege.

Complainants assert that the tax cannot be regarded as a tax upon the privilege of storage because the period of time (after the first twenty-four hours) during which the storage continues, is not taken into account as an element in determining the amount of the tax, that is, the tax is the same whether the storage continues a week or a year; also, that the storage tax is applicable only to the original stor-

age of the gasoline, and though a series of subsequent owners may store it for equal or longer periods than the first, no tax would be due on account of such subsequent storing. The answer to both propositions is that the public policy of the State, as evidenced by this and other statutes, is that the State, for purposes of revenue and regulation, shall derive from the use of petroleum products in this State a revenue of 6c per gallon, in addition to incidental inspection fees. The Act is passed pursuant to that policy, and, as will hereafter be further demonstrated, in the lawful exercise of the taxing power reposed in the Legislature. While the Legislature might have graduated the rate of tax to the period of time during which the storage of a given lot of gasoline continued, such a plan is not indispensable to the exertion of the existing taxing power. It is not our function to review the wisdom of the means or method adopted. Having determined that the power to impose the tax exists, judicial duty is at an end. As to the proposition that this tax is exacted only for the first storage, and not for subsequent storings; even if we assume the correctness of that premise under the terms of the Act, the result is to place the storage tax in the same attitude, in this respect, as the sales tax. Under the sales tax statutes, the same lot of gasoline may be the subject of repeated sales, yet when the sales tax has been once paid, it is not again exacted for subsequent sales. The matter returns to a question of declared public policy as above referred to, and to the further proposition that courts deal with legislative power, not wisdom. The Legislature having acted within the scope of its power in imposing this tax, it does not come within the province of the judiciary to consider why the tax was not graduated according to the length of time gasoline is stored, nor why, if it be the case, it is taxed in the possession of the first storer and not

in that of subsequent storers. It is enough that the Legislature in the lawful exercise of its taxing power has thus imposed the tax. See Treat v. White, 181 U. S. 264; 45 L. Ed. 853; McCray v. U. S., 195 U. S. 27; 49 L. Ed. 78; Spencer v. Merchant, 125 U. S. 355, 31 L. Ed. 769; Veazie Bank v. Fenno, 75 U. S. (8 Wall.) 533, 19 L. Ed. 482.

Complainants contend that if the tax imposed by the Act is an indirect excise the title is misleading and in violation of the Constitution, Art. III, Sec. 16, in that the natural import of the language used, which refers to a tax ''on'' designated petroleum products, etc., conveys the idea that the legislation will deal with the imposition of a direct property tax, so that those who were not interested in the imposition of such a tax, but who would be vitally interested in and perhaps opposed to an indirect privilege tax, would be confused and misled by such a title, there being distinct and essential legal differences in the two forms of taxes. The title to Chap. 13756, *supra*, is:

''AN ACT Providing a Tax on Petroleum Products Kept, Stored or Used in the State of Florida, Which Have Not Been Subjected to the Payment of a License Tax for Sale of Same Under Any Other Statute of the State of Florida, and Providing for the Ascertainment of the Amount Thereof and Providing Penalties for the Violation of this Act.''

It has been held that one of the principal purposes of Art. III, Sec. 16, of the Constitution is to avoid surprise, fraud or stealth in legislation resulting from the use of misleading titles or the inclusion of incongruous and unrelated matters in the same measure. State ex rel. Crump v. Sullivan, 128 So. R. 478. The requirement is that the title, taken as a whole, must be sufficient by fair intendment to cover the subject .matter of the Act, and must not be so

worded as to mislead "an ordinary mind" as to the real purpose and scope of the enactment. In re: DeWoody, 94 Fla. 96, 113 So. R. 677.

In view of the fact that the legislature is accorded wide discretion in the selection of titles, the language employed in the title should not receive a narrow or technical construction but should be construed liberally. The courts attentively enforce the constitutional provision just mentioned in cases which lie within the reason therefor, but the freedom required for the effective exercise of the legislative power will not be interfered with lightly or unnecessarily. The courts disregard mere verbal inaccuracies, resolve reasonable doubts in favor of validity, and hold generally that in order to warrant condemnation of enactments for failure to comply with the rule under discussion, the violation must be substantial and plain. See Posados v. Warner, 279 U. S. 340, 73 L. Ed. 729; Ex parte Pricha, 70 Fla. 265, 70 So. R. 406, State v. Vestel, 81 Fla. 625, 88 So. R. 477; F. E. C. Ry. Co. v. Hazel, 43 Fla. 263, 31 So. R. 272; State v. Bryan, 50 Fla. 293, 39 So. R. 929.

For the purpose of determining the technical classification or status of the tax under consideration, the matter of whether it is a tax "on" petroleum products as property, or whether it is an indirect excise on some taxable privilege connected with the use or ownership of petroleum products, is important To a technician seeking only the legal aspect of the tax for purposes of analysis and classification, the language of the title, "a tax 'on' petroleum products," taken literally and alone, perhaps might imply a direct tax "on" the commodity, and hence a property tax. But the language in which a title is expressed may have technical faults and still the title will cover the subject and not be misleading to the ordinary mind. To be misleading involves an element of deception, something which deliberately leads

the mind into error. In the case of a title, this means an ordinary mind—not the mind of a precisionist weighing the refinements of language in technical aspect, but a mind following the common import of language in contemporary expression. Moreover, component words of the title are not to be isolated in their abstract meaning, but are to be taken in fair collaboration with the entire context of the title. The title does not refer merely to a "tax on petroleum products" generally, but specifies certain petroleum products "kept, stored or used," etc.

"On" is frequently understood to mean "with respect or pertaining to," particularly when used with reference to an object not susceptible of physical contact. The title of almost any law text book furnishes a familiar illustration of that use, e. g. "Thompson on Corporations." Also, "An address was delivered on the League of Nations." Many other illustrations will readily come to mind. To an ordinary, non-technical mind, the title as a whole would fairly indicate that the enactment deals with a tax pertaining to such petroleum products as are kept, stored or used in the State of Florida, and which have not been the subject of the sales tax. Persons interested in ascertaining which of the two permissible methods is to be followed in imposing such tax, whether it is to be imposed upon such gasoline as property, on an *ad valorem* basis, or whether it is to be imposed upon the storage or use thereof as an indirect excise upon the privilege, would be fairly led to the body of the Act for that purpose. This Court knows through common experience that in ordinary parlance the gasoline sales tax is referred to as a "gasoline tax" or a "tax on gasoline". The taxpayer associates the tax with that commodity, and to the ordinary mind it is immaterial whether the tax is a property tax or an excise upon its use. The use of the expression is so general that no doubt is left

in the ordinary mind as to what is meant when, speaking ordinarily and non-technically, the "tax on gasoline" is referred to. The same observations would apply to the language of this title when used non-technically in ordinary conversation. Though the title could be improved upon technically, we cannot sustain the argument that it constitutes a vehicle for the deceptive enactment of a privilege tax instead of a property tax. The ordinary mind would not be deceived.

Complainants next contend that the Act contravenes the interstate commerce clause of the Federal Constitution. That contention is negatived by the terms of the statute. The tax is imposed only upon petroleum products after they have been completely severed from interstate commerce, and have come to rest in and become a part of the common mass of property in this State, receiving the protection of, and being also subject to, the laws of the State, including those exerting the State's power of taxation. Petroleum products stored here in transit in interstate commerce are not subject to the tax under the express provision of the statute. See Hart Refineries v. Harmon, 278 U. S. 499, 73 L. Ed. 745; Texas Co. v. Brown, 258 U. S. 466, 66 L. Ed. 721; Askren v. Cont. Oil Co., 252 U. S. 444; 64 L. Ed. 654; Bowman v. Cont. Oil Co., 256 U. S. 642; 65 L. Ed. 1139; Wagner v. Covington, 251 U. S. 95, 64 L. Ed. 157. An argument is also made that the tax is an unauthorized impost or duty upon imports, contrary to the Federal Constitution, Article I, Section 10. There is no basis of fact in the record for that contention as it is not alleged that the petroleum products in question are imported from foreign countries. It is merely alleged that they are procured from "points beyond the State of Florida."

Complainants further insist that since the gasoline in question is their own property, and is imported by themselves and stored only for their own use, the tax is in contravention of the Declaration of Rights in that it attempts to impose a tax on the mere right to possess property.

A man is free to lay hand upon his own property. To acquire and possess property is a right, not a privilege. (See Section 1, Declaration of Rights.) The right to acquire and possess property can not alone be made the subject of an excise (4 Cooley, Taxation (4th Ed.) p. 3382); nor, generally speaking, can an excise be laid upon the mere right to possess the fruits thereof, as that right is the chief attribute of ownership. See Washington v. State, 13 Ark. 753; Thompson v. Kreutzer, 72 So. R. 891, 26 R. C. L. 236; Thompson v. McLeod, 73 So. R. 193, Ann. Cas. 1918A 674.

It is also well settled, however, that a particular use of property, especially of certain classes, may be made the subject of an excise. The books abound with cases which sustain excises imposed upon a particular use of property, or the exercise of a power which is incidental to ownership. In 26 R. C. L., p. 236, Sec. 209, several illustrations of such excises are given, beginning with one on the use of carriages imposed by the United States as early as the year 1794. Our present license tax upon the use of automobiles is a modern example of the same character of excise. See Jackson v. Neff, 64 Fla. 326, 60 So. R. 350.

In Billings v. U. S., 232 U. S. 261, 58 L. Ed. 596, an excise upon the use of foreign built pleasure yachts was sustained. In the recent case of Bromley v. McCaughn, 280 U. S. 124, 74 L. Ed. 226, it was held that an excise upon a single one of the powers incident to ownership, in that case a gift of property, was valid. Many cases are therein cited sustaining excises upon the exercise of one

of the numerous rights incident to ownership, of which "use" is one. Storage is a species of use. An excise upon the use of gasoline by sale, consumption or storage has recently been sustained by the Supreme Court of the United States in at least two cases, Bowman v. Cont. Oil Co., 256 U. S. 642, 65 L. Ed. 1139, and Texas Co. v. Brown, 258 U. S. 466, 66 L. Ed. 721. See also Hart Refineries v. Harmon, 278 U. S. 499, 73 L. Ed. 475. The power to store can not be said to be a more important right incident to ownership, nor any more immune from an excise, than the power to sell of consume. A tax quite similar to this one in its essential characteristics was sustained in Foster & Creighton v. Graham, 285 So. W. R. 570, 47 A. L. R. 971, and note.

The tax here under consideration is quite unlike that involved in Thompson v. McLeod, 73 So. R. 193, Ann. Cas. 1918 A 674, and in Thompson v. Kreutzer, 72 So. R. 891, which levy was there termed an annual privilege tax and was imposed upon all persons extracting turpentine from standing trees. It was held that such was a direct property tax, repugnant to the inherent right to own property in that it was in effect a tax on the right to possess the fruits of one's own property, no taxable privilege being involved.

The tax under consideration is not an excise upon the mere right to acquire and possess property. Nor is it an excise upon the only use to which gasoline may be put, nor upon a power indispensable to use or enjoyment, for gasoline is in common use without being stored. Even if the possession of gasoline be regarded as an inherent or natural right, the storage of such a commodity is certainly not such a right as is immune from regulation. There is no inherent right to use dangerous property without restraint. The noxious and highly inflammable character

of gasoline, particularly when stored in large quantities, is common knowledge. The State has the power to regulate that species of use of it, as well as the sale of it, by the imposition of an excise either in the exercise of the police power, the taxing power or both. See Texas Co. v. Brown, 258 U. S. 466, 66 L. Ed. 721. One lawful method of regulation is by means of an excise for revenue purposes upon the privilege of storing it, which is the tax before us. The taxing power may be exerted for either regulation or revenue, or for both purposes. Gundling v. Chicago, 177 U. S. 183, 44 L. Ed. 725.

Since property is the sum of all the rights and powers incident to ownership, the imposition of excises upon those powers might conceivably be carried to the point where it would amount to a direct property tax, abnormal differences in degree ultimately resulting in a distinction in kind. See Bromley v. McCaughn, *supra*. But this tax is upon only a single one of those rights, the right to store the property. All other rights, which collectively constitute ownership, may be enjoyed free of the tax. The tax is therefore well within the category of an indirect tax upon use.

Complainants next contend that the tax is void because it is "unreasonable, confiscatory and in violation of the spirit of the Constitution," both State and Federal.

The province of the judiciary in considering an objection of the nature just stated, as applied to an excise, is limited. In the direct imposition of a *State* excise upon taxable privileges, the legislature exercises a power of extensive scope. Organic requirements as to uniformity and valuation, applicable to *ad valorem* taxes, do not apply to excises, since the latter are not regarded as a "tax" within the meaning of constitutional limitations requiring uniformity of rates and just valuations. Jackson v. Neff, 64

Fla. 326, 60 So. R. 350; Hiers v. Mitchell, 95 Fla. 345, 116 So. R. 81. In the imposition of excises the only organic limitations upon the State are that due process, equal protection and contract rights shall be observed, and that interstate commerce shall not be burdened nor Federal functions interfered with. Therefore there must be a reasonable basis of classification, and there must be geographic, as distinguished from intrinsic, uniformity. Amos v. Mathews, 126 So. R. 308; Amos v. Gunn, 84 Fla. 285, 94 So. R. 615; Jackson v. Neff, *supra;* Peninsular Casualty Co. v. State, 68 Fla. 411, 67 So. R. 165; Panhandle Oil Co. v. Mississippi, 277 U. S. 218, 72 L. Ed. 857. See also Newell v. Greene, 86 So. E. R. 291. Unless the classification, or the amount of the tax, is purely arbitrary and unreasonable under every conceivable condition in practical affairs, the courts will not interfere.

It is held in the Federal Courts that the mere fact that an excise tax, imposed for revenue purposes, operates to practically suppress the business taxed, does not render an Act of Congress unconstitutional, and that it is not a part of the function of a court to inquire into the reasonableness of the excise, either as respects the amount, or the property upon which it is imposed. McCray v. U. S., 195 U. S. 27, 49 L. Ed. 78; 1 Ann. Cas. 561; Brazee v. Michigan, 241 U. S. 340, 60 L. Ed. 1034; Armour & Co. v. North Dakota, 240 U. S., 510, 60 L. Ed. 771; Tanner v. Little, 240 U. S. 369, 60 L. Ed. 691; Rast v. Van Deman, 240 U. S., 342, 43 L. Ed. 679; Ann. Cas. 1918B 455; L. R. A. 1917A 421; Alaska Co. v. Smith, 255 U. S. 44, 65 L. Ed. 489

The rule in this State, however, is somewhat more stringent. This Court fully recognizes the doctrine, long established, that the judicial department can not prescribe to the legislative department limitations upon the exercise

of its existing powers. That doctrine, however, is consistent with the further doctrine heretofore adopted by this Court that although there is no express limitation upon the power of the legislature to provide for a tax on licenses, nevertheless the organic requirements of due process and equal protection must be observed in imposing such a tax. See Roach v. Ephren, 82 Fla. 523, 90 So. R. 609.

The rule in this jurisdiction was thus stated in State ex rel. Bonsteel v. Allen, 83 Fla. 214, 91 So. R. 104:

"While it is within the power of the courts to declare laws levying license taxes void because of the unreasonable and arbitrary exercise of the State's power, either in the classification of or in fixing the amount of the license, such power will not be exercised unless the amount of the license tax is so great, or the classification so palpably arbitrary as to be beyond necessities for the legislation, or equivalent to an impairment of the constitutional rights of property, or tend to prevent a great number, if not all persons, from pursuing otherwise lawful occupations which do not impair public safety, public health, or destroy property."

The noxious qualities peculiar to gasoline and other petroleum products afford a just and reasonable basis for classifying them apart from other commodities for the purpose of imposing an excise tax upon their use. Bowman v. Cont. Oil Co., 256 U. S. 642; 65 L. Ed. 1139; Texas Oil Co. v. Brown, 256 U. S. 466, 66 L. Ed. 721; Southwestern Oil Co. v. Texas, 217 U. S. 114, 54 L. Ed. 688.

That this tax is confined to gasoline, and like petroleum products, "imported into this State from another state or foreign country," or otherwise received into the State, does not amount to an arbitrary discrimination denying

equal protection. The court takes judicial notice that no petroleum products are produced in this State. All such products used here are imported. Hence this storage tax, in practical effect, would apply to *all* petroleum products stored in this State but for the fact that the Legislature, having provided for both a sale tax and a stortage tax with reference to petroleum products, has expressed its intention—and it is therefore the public policy of the State—not to collect both a storage tax and a sale tax with reference to the same lot of gasoline, the payment of either being an exoneration from the other. The latter circumstance does not constitute an obnoxious discrimination. Hart Ref. v. Harmon, 278 U. S. 499, 73 L. Ed. 475; American Sugar Ref. v. Louisiana, 179 U. S. 89, 45 L. Ed. 102; Peo. v. Zimmerman, 278 U. S. 632, 73 L. Ed. 184; S. W. Oil Co. v. Texas, 217 U. S. 14, 54 L. Ed. 688; Manufacturers Ins. Co. v. Clarke, 103 Atl. R. 931; Bowman v. Cont. Oil Co., 256 U. S. 642, 65 L. Ed. 1139; Singer Sewing Mach. Co. v. Brickell, 233 U. S. 304, 58 L. Ed. 974. See also Askren v. Cont. Oil Co., 252 U. S. 444, 64 L. Ed. 654; Wagner v. Covington, 251 U. S. 95, 64 L. Ed. 157. Nor do the facts just adverted too constitute a discrimination against the products of another state based purely on origin. See City of West Palm Beach v. Amos, decided this day.

While this tax may fall oppressively upon certain classes of persons, that circumstance alone does not justify the courts in condemning it. In order to justify the courts in striking down an *excise* as confiscatory, it must be so arbitrary or oppressive as to clearly amount to a denial of due process or of equal protection. To strike down a tax falling within the latter category would not amount to the imposition of judicial limitation upon legislative power, but rather the condemnation of attempted usurpation of

a prohibited power. In testing an excise as against the objection that it is confiscatory, it is not the sole test to merely compare the amount of the tax with the value of the property upon the use of which the taxing power is exerted. While that element may be taken into consideration, it does not furnish the exclusive or controlling test. Where the public health and safety are not involved, the ultimate test is whether or not the tax so imposed upon the privilege is so arbitrary or oppressive as to prohibit a great number, if not all persons, from pursuing occupations otherwise lawful. When, as here, the excise serves also as a regulation in the interest of public health and safety, that fact also enters into consideration.

The only allegation of fact in the bill in support of the charge of confiscation is that the cost of gasoline to complainants is from 8½ to 12½ cents per gallon, while the storage tax is six cents per gallon. Although such tax may fall burdensomely upon complainants in their business, the classification is not arbitrary, nor is the amount of the tax so far prohibitory of the use of gasoline in the conduct of lawful business enterprises as to render the tax obnoxious to the principles above outlined, particularly since the privilege tax directly and substantially involves the public health and safety. It is common knowledge that gasoline upon which the equivalent sales tax of six cents per gallon has been paid is in common and extensive use in business enterprises. The State's statistics show that the quantity of gasoline consumed has not diminished, but has increased, since the time when there was no tax upon its use.

As against the objections raised, the excise under consideration is valid.

The order appealed from is affirmed.

TERRELL, C. J., and WHITFIELD, ELLIS, BROWN and BUFORD, J. J., concur.