STATE, *ex rel.* CARY D. LANDIS, Attorney General, v. CARL AULT *et al.*

176 So. 789.

Division A.

Opinion Filed October 27, 1937.

*Cary D. Landis,* Attorney General, *Hawthorne & More-head* and *Loftin, Stokes & Calkins,* for Relator;

*Martin F. Whelan, Jr., Mitchell D. Price & Charles W. Zaring, William J. Pruitt, Julius F. Parker, John M. Murrell* and *S. Whitehurst's Sons,* for Respondents.

BUFORD, J.—On the 26th day of July, 1937, we filed our opinion and judgment in this cause pursuant to motion to quash the information in Quo Warranto. In that opinion and judgment we denied the motion to quash, holding Chapter 18572, Special Acts of 1937, valid as against the attacks made upon it.

After that opinion and judgment was entered the Respondents in due course filed answer to information and rule *nisi.* The answer presented many of the same questions of law which had been presented by motion to quash. We were asked to consider all questions raised in the light of the answer on motion to quash the answer and motion for writ of ouster notwithstanding the answer. Able briefs were filed by both Relator and Respondents. Able oral argument was presented and heard at length and we again took

all the issues presented under consideration, our former opinion in the cause notwithstanding.

The opinion and judgment filed on July 26, 1937, having been filed at the present term of the Court in a case of original jurisdiction which is still pending and undisposed of, remains under the control of the Court subject to being vacated, modified or overruled.

A majority of the Justices of this Court are now of the opinion that in so far as what is hereinafter stated, or what may be otherwise stated in any opinion concurred in by a majority of the Court and filed at this time, is in conflict with what was said in that opinion of July 26, 1937, the holdings of the former opinion should be overruled and superseded and it is so ordered.

Being bound by the former decision of this Court as to the construction and applicability of Section 24, Article III, of the State Constitution, as amended by adoption at the general election of 1934, we must hold that until the Legislature has proceeded under that provision the power continues to enact special legislation affecting municipal corporations. See State, *ex rel.* Mathews, v. Alsop, 120 Fla. 628, 163 So. 80; State v. Town of Bell Glade in Palm Beach County, 121 Fla. 200, 163 So. 564; State, *ex rel.* Landis, Attorney General, v. Jones, 121 Fla. 216, 163 So. 590; State *ex rel.* Brown, v. Emerson, 126 Fla. 576, 171 So. 663.

The present writer is not at all certain that the enunciation found in State, *ex rel.* Johnson, v. Johns, 92 Fla. 187, 109 Sou. 228, as follows: "Whatever the phrase 'local government' may mean in government, the Constitution of this State contains no express provisions with reference thereto, and there are no provisions of the organic law that so modify the express provisions of Section 8, Article VIII, of the Constitution that 'the Legislature shall have power

to establish and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time, as to withhold from the Legislature the power to designate by statute the particular persons who shall exercise the powers of a municipality created by statute, such power to designate being a part of or incidental to the quoted organic power to establish municipalities, to provide for their government and to prescribe their jurisdiction and powers," is, sound or in accord with the fundamental principles underlying the entire structure of our government. Were it not that a majority of the Justices of this Court consider the Act here involved invalid, because of the infirmity which we shall presently mention, we would be inclined to consider further whether or not the holding in that case, and other holdings of like tenor should now be overruled.

In the instant case, however, we are unable to adhere to our holding in our said opinion of July 26th, *supra,* that the power vested in the Legislature has been exercised in compliance with the Constitution.

Chapter 18,572, Special Acts of 1937, is in our opinion void because the title of the Act offends against the provisions of Section 16, Article III, of the Constitution, as construed in Sheip Co. v. Amos, 100 Fla. 863, 130 Sou. 699:

"It has been held that one of the principal purposes of Article III, Section 16, of the Constitution is to avoid surprise, fraud or stealth in legislation resulting from the use of misleading titles or the inclusion of incongruous and unrelated matters in the same measure. State, *ex rel.* Crump, v. Sullivan, 128 So. R. 478. The requirement is that the title, taken as a whole, must be sufficient by fair intendment to cover the subject matter of the Act, and must not be so

worded as to mislead 'an ordinary mind' as to the real purpose and scope of the enactment. In re: DeWoody, 94 Fla. 96, 113 So. R. 677,

  "In view of the fact that the Legislature is accorded wide discretion in the selection of titles, the language employed in the title should not receive a narrow or technical construction, but should be construed liberally. The courts attentively enforce the constitutional provision just mentioned in cases which lie within the reason therefor, but the freedom required for the effective exercise of the legislative power will not be interfered with lightly or unnecessarily. The courts disregard mere verbal inaccuracies, resolve reasonable doubts in favor of validity, and hold generally that in order to warrant condemnation of enactments for failure to comply with the rule under discussion, the violation must be substantial and plain. See Posados v. Warner, 279 U. S. 340, 73 L. Ed. 729; *Ex Parte* Pricha, 70 Fla. 265, 70 So. R. 406; State v. Vestel, 81 Fla. 625, 88 So. R. 477; F. E. C. Ry. Co. v. Hazel, 43 Fla. 263, 31 So. R. 272; State v. Bryan, 50 Fla. 293, 39 So. R. 929." * * *

"To be misleading involves an element of deception, something which deliberately leads the mind into error. In the case of a title, this means an ordinary mind—not the mind of a precisionist weighing the refinements of language in technical aspect, but a mind following the common import of language in contemporary expression. Moreover, component words of the title are not to be isolated in their abstract meaning, but are to be taken in fair collaboration with the entire context of the title."

The title of the Act here under consideration is:

"An Act to Amend and Reenact the Charter of the City of Hialeah, in the County of Dade, and to Provide for its

Government, Jurisdiction, Powers, Franchises and Privileges and Means for Exercising the Same."

Section 16, Article III, of the Constitution provides: "Each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title; and no law shall be amended or revised by reference to its title only; but in such case, the Act as revised, or section as amended, shall be reenacted and published at length."

There was no semblance of compliance with this provision of the Constitution as to amendments. The Act did not purport to amend a single section of the former Charter Act of the City of Hialeah. It does not amend, but repeals, the former Charter. It abolishes the form of government theretofore enjoyed by the municipality and sets up in lieu thereof a new and different form of government. It strikes down local self-government and sets up a government to be administered for a period of three years by five persons named in the Act. There was nothing in the title given the Act which indicated that such was the purpose of the Act. The title of the Act was calculated to lead the "ordinary mind" (See Sheip Co. v. Amos, supra, text 874, 875) into error.

The Charter of Hialeah had established an aldermanic form of government under which the municipality was functioning at the time of the passage of the Act. To have "reenacted" the Charter it appears to us that at least the fundamental principles of government embraced in the Charter must have necessarily been retained. This is what the title of the Act indicated to the "ordinary" mind was proposed to be accomplished by the Act. If the fundamental principles of government theretofore obtaining in the Charter had been retained by the provisions of the Act

other proposed changes would have been of little consequence. When the title of the Act affirmatively indicated that such fundamental principles would be retained and re-enacted and when such was not the purpose of the Act and the provisions of the Act abolished the form of government and set up a new and different form of government the title was fatally misleading and vitiated the Act.

Therefore, the demurrer to the information should be sustained and the rule discharged.

It is so ordered.

ELLIS, C. J., and BROWN, J., concur.

TERRELL, J., agrees to the judgment.

CHAPMAN, J., dissents.

BROWN, J. (concurring specially).—The outstanding and controlling question presented in this case, to my mind, is this:

Can the Legislature, under our Constitution, by legislative Act, legislate out of office the governing body of an existing municipality and legislate into office a new governing body composed of members chosen and designated by name by the Legislature in the Act, to hold office for a period of three years, without including in the Act a referendum clause or otherwise giving the citizens of the city any voice in the matter whatever?

As I understand and construe the Constitution of Florida, the Legislature has no such power. While I agree with Mr. Justice BUFORD that the title of the Act gives no notice that in the body of the Act any such drastic power would be attempted to be exercised, thus rendering the title defective, my view is that even if the title should be held sufficient, the Legislature possesses no such power as is attempted to be exercised by this Act.

I do not question the motives of the Legislature, but I do question their power.

The question above referred to is to my mind the main question involved in this case. Its significance and importance cannot be exaggerated. The decision of this question deals with fundamental principles which have their roots deep in the past and are embedded in the history, the traditions, the institutions and the constitutional law of our State and Nation.

If the Legislature of this State has the power to legislate out of office the governing body of the City of Hialeah and legislate into office a new governing body for said city of the Legislature's own choosing, it of course follows that it has the power to do the same thing at any time it sees fit with reference to any.of the larger cities of the State, such as Miami, Jacksonville and Tampa, and of any other city or town in the State, regardless of size. This shows the tremendous importance of the question involved.

When this court by a vote of three to two overruled the demurrer of the respondents, the existing governing body of the City under its old charter, the writer and Mr. Justice TERRELL dissented. Since then the respondents have filed an answer, and the case is now before us on a demurrer to that answer and a motion for judgment of ouster. I do not regard the former opinion and order of this court overruling respondents' demurrer to the information. as irrevocably settling the law of this case. This is a case of original jurisdiction, and this court retains complete power and jurisdiction over the case, including the power to vacate any of its previous orders in the case until final judgment has been rendered and the term of court at which the judgment was rendered has expired. In view of the importance of the case, I think that I should express as

briefly as may be the reasons why I thought that the respondents' demurrer to the information in quo warranto should have been sustained by this court, and also why the motion for judgment of ouster should be denied. While in my opinion the former order overruling the demurrer to the information should be vacated, I do not consider it necessary to grant any rehearing. The case has been very ably and thoroughly argued by both sides, both on the demurrer to the information and on the demurrer to the respondents' answer and motion for judgment of ouster and no useful purpose could be subserved by granting a rehearing.

Now as to the reasons which underlie my view on the main question here involved. In the first place I might say that I do not regard the opinion and decision of this Court in the case of State, *ex rel.* Johnson, v. Johns, *et al.,* 92 Fla. 187, 109 So. 288, as being conclusive in the present case. The Act dealt with in the cited case was an Act establishing a *new* municipality, the City of Hollywood, and naming in the Act the members of the City Commission who should hold office for the first four years, whereas the Act here under consideration deals with an existing municipality which had been in existence for some twelve years at the time this Act was adopted, and the members of whose governing body had been duly elected by the qualified voters of the City of Hialeah.

The authorities quite generally hold that when the Legislature by special Act incorporates a new city or town it may in the Act designate the members of the governing body of the city or town to hold office for a reasonable time until an election can be held whereby the qualified voters of the city or town may elect a governing body of their own choosing.

In the case of State, *ex rel.* Johnson, v. Johns, above cited, I was of the opinion that the Legislature had exceeded its power in naming the first governing body of the City of Hollywood to hold office and govern the city for four years. My reasons for that view were set forth in a dissenting opinion, which reasons apply with even greater force to the present Act with refereence to the City of Hialeah. I therefore deem it pertinent here to quote certain paragraphs from that opinion as follows:

"While the Legislature could, no doubt, as an incident to its legislative power, name and appoint the members of the governing board to act temporarily until such reasonable and convenient time as might be required for the primary organization of the municipality, and the selection by the qualified voters thereof of the members of such governing body who were to hold for the first full term, I am inclined to the opinion that it cannot go beyond the field of legislative power and control through its agents the administration and government of a town or city of this state for so long a period as four years, thus depriving the city of all voice for that considerable period of time in the selection of its own governing officials. Even if a local community of this state has no inherent right of local self-government which the Legislature is bound to respect, it would appear that the Legislature cannot exercise the executive and governmental functions of a town or city, under our Constitution, either directly or through the agency of persons selected and appointed by it. Our Constitution divides the powers of government into three grand divisions—the legislative, executive, and judicial—and expressly prohibits either of these departments from exercising any power belonging to either of the others. If the Legislature has the power to govern a city through its appointed agents

for four years, it may also do so for ten years, or indefinitely. The writer realizes that the authorities are divided on this question, but inclines to the view expressed in those decisions which hold that this is not a legitimate exercise of legislative power. See 12 C. J. 836-838, and cases cited; 1 McQuillin, Munic. Corp. 399-403.

The city commission appointed by the Legislature in this instance is vested with the usual power to levy taxes, require the payment of business and occupational licenses, and expend the moneys of the municipality. Thus the citizens of the municipality must endure taxation without representation for a period of four years. If the Legislature could do this in this instance can it not deprive every town and city in this state of every vestige of local self-government, and impose upon them the rule of governing bodies in whose selection they have no voice—a principle utterly at variance to American history, traditions, and ideals of government?

"I fully realize that Section 8 of Article VIII of the Constitution of 1885 gave the Legislature very broad powers 'to establish and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time;' but all these powers are granted with reference to 'municipalities,' and, according to a sound and well-accepted rule of constitutional construction, this word must be interpreted to mean what it was understood to mean by the makers of the Constitution—it must be interpreted in the light of the commonly accepted meaning of the word 'municipality' at the time the Constitution was adopted. And in arriving at this, it is permissible to consider the previous history of our state and country and of our race of people, their conception of what a municipality was, as well as in the light of actual

conditions existing when this Constitution was framed. Applying these rules, there can be no doubt that the makers of the Constitution had in mind, when using this word, municipal corporations with certain powers of local self-government, among them the power of selection of their governing body, which was and had been for centuries an essential feature of municipal corporations in this country, including Florida, and in the British Isles, from whence so many of our ancestors came. Even the dictionary definition of the word 'municipality' embraces the feature of local self-government as a distinguishing one.

"If this be true, could the Constitution makers, when they vested in the Legislature the power to create a municipality, prescribe its form of government, etc., have meant or intended that the Legislature should have the power to create and prescribe any form of city government, any sort of legislative oligarchy, entirely irresponsible to and beyond the influence of the people most intimately concerned, and call that a municipality within the meaning of the Constitution? Could the Legislature thus 'speak the word of promise to the ear and break it to our hope?' My thought is that no matter by what name it may be called a city or town that has no powers of local self-government, that has no power to elect its own governing body, who are to administer its local affairs, which primarily concern the people of that particular community, is not a municipal corporation as that term has been understood in America and among Anglo-Saxon peoples anywhere in the world for many centuries. It may be an agency or department of the state government for local administration, but it is not a municipality. The shell may be there, but the soul is gone. The makers of the Constitution of 1885 were the descendants of men who had shed their blood in defense of

their conception of the right to local self-government; they were acquainted with the history of our people; and our Constitution as a whole assumes the existence of this right, while not expressly protecting it except as to county government, and except also, possibly, in a general way, by the first two sections of the Bill of Rights, which assert that 'all men are equal before the law and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing happiness and obtaining safety;' and 'all political power is inherent in the people;' and again, 'This enunciation of rights shall not be construed to impair or deny others retained by the pepole." * * *

"Even under the iron rule of Rome, the cities of the Roman Empire were granted a certain measure of local self-government. And in England, and the British Isles generally, the right of local self-government of cities, boroughs, and towns were secured and built up as early as the days of Alfred, proving to be one of the bulwarks of liberty in that country, and it was not until the fifteenth century that the practice of granting charters to cities was inaugurated. These charters were not so much a grant of new powers as they were a recognition and guaranty of the rights of local self-government which had long existed.

"By the Great Charter, King John was required to confirm some of the charters granted during his reign, and Section 16 of the Magna Charta reads as follows: 'And the city of London shall have all its ancient liberties and free customs, as well by land as by water; furthermore, we will and grant that all other cities and boroughs and towns and ports shall have all their liberties and free customs.'

"Municipal local self-government is, as Judge Cooley has tersely said, 'of common-law origin, and having no less than

common-law franchises.' Our state, long before the Constitution of 1885 was framed, had formally adopted the English common law where not inconsistent with our own legal system.

"Is not this time-honored right of the people of municipal corporations to choose their own local officers one of the rights retained by the people under Section 24 of our Declaration of Rights? Nowhere does our Constitution expressly confer the power upon the Legislature to take away this right, nor is the right of local self-government anywhere forbidden by that instrument, and the framers of the Constitution must have contemplated that the then existing right of municipal corporations to choose their local officers to administer their local affairs would continue as the one great essential feature of municipalities in this state." * * *

"While invasions of the right of municipal local self-government on the part of Legislatures have been comparatively few in this country up to the present time, these experiments have, in many instances, resulted disastrously, and have proven that it is dangerous to depart from this time-tested principle which has grown with our growth and has become, as it were, a part of the brawn and sinew of the American system of government.

"The authorities on this subject will be found collated and reviewed in the able briefs filed in this case, and also in Volume 1, McQuillin, Munic. Corp., pp. 107, 141, 153, 240, 376 to 407; Vol. 1, Dillon, Munic. Corp. (5th ed.) pp. 154-181; 28 Cyc. 282-286, 291-296; Cooley, Const. Lim. 225; 12 C. J. 754."

A very able discussion of this question will be found in the opinion of Mr. Justice COOLEY, one of the greatest writers on constitutional law which this country has pro-

duced, in the case of People v. Hurlbut, 24 Mich. 44, 9
Am. Rep. 103. In that opinion Mr. Justice COOLEY said:

"The state may mould local institutions according to its
views of policy or expediency; but local government is
matter of absolute right; and the state cannot take it away.
It would be the boldest mockery to speak of a city as pos-
sessing municipal liberty where the state not only shaped
its government, but at discretion sent in its own agents to
administer it; or to call that system one of constitutional
freedom under which it should be equally admissible to
allow the people full control in their local affairs, or no con-
trol at all.

"What I say here is with the utmost respect and def-
erence to the legislative department; even though the task
I am called upon to perform is to give reasons why a blow
aimed at the foundation of our structure of liberty should
be warded off. Nevertheless, when the state reaches out
and draws to itself and appropriates the powers which
from time immemorial have been locally posesssed and ex-
ercised, and introduces into its legislation the centralizing
ideas of continental Europe, under which despotism,
whether of monarch or commune, alone has flourished, we
seem forced back upon and compelled to take up and de-
fend the plainest and most primary axioms of free govern-
ment, as if even in Anglican liberty, which has been gained
step by step, through extorted charters and bills of rights,
the punishment of kings and the overthrow of dynasties,
nothing was settled and nothing established."

While the Legislature is vested by Section 8 of Article
VIII of the Constitution with broad powers over munici-
palities, those powers, as we have frequently held, must be
exercised so as not to conflict with other constitutional pro-
visions. And in the case of State v. City of Stuart, 97

Fla. 69, 120 So. 335, we held that the Declaration of Rights was given primacy of position in our State Constitution and that it constitutes a limitation upon each and all of the departments of the state government, including the legislative department.

For the reasons above pointed out, as well as those stated in the opinion of Mr. Justice BUFORD, I think the motion for judgment of ouster should be denied and the information in quo warranto in this case quashed.