CITY OF ORLANDO, a Municipal Corporation, v. JOSEPH L. GILL, operating and trading as San Juan Billiard Hall.

174 So. 224.
Division A.
Opinion Filed May 1, 1937.

*Merton S. Horrell* and *James G. Horrell,* for Plaintiff in Error.

*H. N. Roth,* for Defendant in Error.

BUFORD, J.—Defendant in error filed suit in Circuit Court of Orange County, Florida, to recover alleged excess paid to the City of Orlando, a municipal corporation, as license tax incident to the privilege of operating twelve billiard or pool tables at certain location in said municipality.

The Municipality claimed the right to collect $25.00 for

the first table; $20.00 for the second table and $15.00 for each additional table, less 20% of the total sum if the tax was paid on or before October 15th of the tax year, under authority of a city ordinance enacted pursuant to the provisions of Chapter 15394, Special Acts of the Legislature of 1931. Section 1 of this Act was as follows:

"Section 1. "That all property, real and personal, within the City of Orlando, taxable for State purposes shall be taxable by the City for municipal purposes. The City Council is hereby authorized to levy and impose license taxes for municipal purposes by ordinance, upon any business, profession, occupation and privilege engaged in or enjoyed within the city, and to grade and fix the amounts thereof without regard to any of the provisions of any general revenue law now in force, or hereafter to be enacted which does not specifically repeal this Act."

The plaintiff contends that he was entitled to the license upon the payment of the license tax of $12.50 per table on the first four tables and $5.00 per table for each additional table, less 20% of the aggregate amount of such license tax if the same was paid on or before October 15th of the license year, such tax being based upon the provisions of Chapter 17167, Acts of 1935.

The plaintiff in the court below paid, under protest, the license tax demanded by the City with an agreement entered into at the time between him and the City that the City would refund to him the excess tax, if the same should be held illegal.

Chapter 17167, Acts of 1935, was an Act dealing especially with license tax for pool and billiard halls in this State and repealing all inconsistent laws. This Act is short and we quote Sections 1 and 2 thereof:

"Section 1. That on and after October 1, 1935, there is

hereby levied and imposed and shall be collécted for the privilege of engaging in or continuing to engage in the business of operating a pool or billiard hall an annual occupation license tax in the following amounts: Any Hall operating not more than four tables, $25.00 per table per annum; for each additional table, $10.00 per annum. Provided, that there is hereby levied and imposed a county license tax equal to fifty per cent of the above amounts; and provided, further, that any incorporated city or town may impose an annual occupational license tax not to exceed fifty per cent of the State license.

"Section 2. All laws or parts of laws in conflict with or inconsistent herewith are hereby repealed and superseded. But this shall not be construed as repealing any law consistent herewith."

We construe this Act to mean that it fixes a State policy for the licensing of pool and billiard halls in this State and that in so far as it limits the license which may be imposed by a municipality for the privilege of operating pool or billiard halls it supersedes all special legislative Acts theretofore passed inconsistent with its provisions. It is not necessary for us to go beyond this jurisdiction for authority for this holding. See State, *ex rel.* Greeson, v. Roberts, 126 Fla. 114, 170 Sou. 457.

Demurrer to the declaration suggested that the declaration showed upon its face that the payment of the tax was a voluntary payment and, therefore, the plaintiff had no cause of action. It is a general rule, and one that is well recognized, that a person who voluntarily pays an illegal tax, even though he pays it under considerable actual pressure, cannot maintain an action to recover it. 26 R. C. L. 455, 48 A. L. R., note 1386. But there are conditions under which the payment of such tax may be involuntary.

The payment of an illegal tax under protest to avoid the imposition of a penalty has been held to be an involuntary payment. See St. Johns Electric Co. v. St. Augustine, 81 Fla. 588, 88 Sou. 387; S. A. L. Ry. Co. v. Allen, 82 Fla. 191, Sou. 555. It appears from the declaration that if the plaintiff had not paid the tax he would have at least been compelled to desist from the operation of his business until he could procure a judicial determination of his right to continue the operation under the payment of the tax as contended for by him.

The case of Town of Columbia City v. Arithes, 84 Ind. 31, 43 Am. Rep. 80, is the only case which has been cited to us and the only one which we have found in which the identical questions presented here were presented. In that case a taxpayer protested the payment and the municipality entered into an agreement with him that it would refund the tax upon the excess being held illegal by a court of competent jurisdiction, just as was done here. The Supreme Court of Indiana held that the payment of the tax did not constitute a voluntary payment and that the excess might be recovered. The Court said, in speaking of the agreement between the municipality and the taxpayer:

"It was not the creation of a debt against the Town in the ordinary sense in which that phrase is used. It was but the transaction of the current and incidental business of the corporation from which a liability might result dependent upon the events which the trustees could not control."

The Court further said: "The written memorandum which the Trustee afterward made as to the terms upon which the appellee and others paid the license fee demanded of them was quite informal but it constituted, when entered, a record of a contract obligatory upon the Town and

confirmatory of the oral contract under which the appellee paid the money sued for in this action."

In the instant case the record shows that the contract to refund the money was not made after the payment of the tax confirmatory of an agreement to return it under stated conditions, but it was made coincident with the payment of the money. Under such conditions a taxpayer could not be held to be a volunteer.

For the reasons stated, the judgment should be affirmed and it is so ordered.

Affirmed.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.