AMERICAN BAKERIES COMPANY, a corporation organized and existing under the laws of Georgia, and Seybold Baking Company, a corporation organized and existing under the laws of Georgia, v. CITY OF HAINES CITY, FLORIDA, a Municipal Corporation, L. EARLE ROBINSON, as Mayor and as City Commissioner, W. C. LOCKHART and J. R. WADSWORTH, as City Commissioners, R. E. BEAGLE, as City Manager, EVA K. WINGER, as City Treasurer, and Collector, PAUL D. JOYCE, as City Clerk, ZED R. YALE, as Municipal Judge, and V. A. MURPHY, as Chief of Police of the City of Haines City.

180 So. 524.

Opinion Filed March 16, 1938.

Rehearing Denied April 28, 1938.

792

794

J. *Velma Keen* and *A. Frank O'Kelley,* Jr., for Appellants;

*Maxwell & Cobbey* and *Gordon C. Huie,* for Appellees.

BROWN, J.—This case involves the question of whether a power to impose certain licenses contained in a munic-

ipal legislative charter was repealed, superseded, or suspended, by a provision contained in a later general Act.

This general question has often proved difficult of solution in this jurisdiction. Its consideration has been somewhat complicated by Section 24, Article III of the Constitution which provides that: "The Legislature shall establish a uniform system of county and municipal government, which shall be applicable except in cases where local or special laws are provided by the Legislature that may be inconsistent therewith."

This section was amended at the general election in 1934 so as to read as follows: "The Legislature shall establish a uniform system of county and municipal government, which shall be applicable, except in cases where local or special laws *for counties* are provided by the Legislature that may be inconsistent therewith. The Legislature shall by general law provide for their incorporation, government, jurisdiction, powers, duties and privileges under such classifications, and no special or local laws incorporating cities or towns, providing for their government, jurisdiction, powers, duties and privileges shall be passed by the Legislature." (Italics supplied.)

It will be observed that the amendment of 1934 appears to contemplate that general laws relating to the government of counties and municipalities shall be applicable "except in cases where local or special laws *for counties* are provided by the Legislature that may be inconsistent therewith." The words "for counties" were inserted by the amendment of 1934, which would seem to so limit the clause as to indicate that uniform laws for the government of municipalities should be applicable in spite of the fact that there might be local or special laws relating to municipalities inconsistent therewith. However, the amendment of 1934 has little if any, application to the question before us

here, which we think is governed by general principles of construction. Furthermore, we have held that this amendment to Section 24, Art. III, adopted in 1934, in so far as it affects special or local laws relating to the government of cities and towns, is not self-executing and cannot become operative until the Legislature has seen fit to pass the general system of laws for the classification and government of cities and towns so commanded by the amendment. See State v. Alsop, 120 Fla. 628, 163 So. 80; State v. Jones, 121 Fla. 216, 163 So. 590; State v. Emerson, 126 Fla. 576, 171 So. 663.

In this case the American Bakeries Company and Seybold Baking Company, both Georgia corporations, filed a bill against the City of Haines City, Florida, to enjoin the enforcement of Ordinance No. 160, in so far as it affected the business of the plaintiffs. The bill alleged that the American Bakeries Company owns and operates a bakery in Orlando, Florida, and Seybold Bakery Company owns and operates a bakery in Lakeland, Florida, and that each of them takes orders for and makes sales and deliveries of bakery products in a large number of cities in the State of Florida, including Haines City; that the bakery products sold at wholesale by plaintiffs in the City of Haines City are manufactured in their respective bakeries in Orlando and Lakeland and are delivered by trucks owned and operated by complainants to a large number of retail business houses in the City of Haines City; that the methods of taking the orders and making deliveries to stores in Haines City is, in some instances, that certain orders are taken by the operators of the trucks from certain business houses and such orders are filled by being delivered by the operators of the trucks on a subsequent day or days, and, in other instances, that the orders taken are filled and delivery made from goods

and products at that time loaded on the trucks, thus making immediate delivery thereof.

The bill further alleges that Ordinance No. 160, which became effective August 4, 1934, requires plaintiffs to procure occupational licenses before they may be permitted to carry on the business above referred to in Haines City; that plaintiff had been paying such licenses up to September 30, 1937, but that Ordinance No. 160, in so far as it affects plaintiff's business, is in conflict with Chapter 18011, Acts of 1937, and especially Section 5 thereof, and that said Ordinance is therefore void and inoperative in so far as it affects the plaintiffs. A copy of the Ordinance is attached to the bill.

The defendant City and its officers interposed a motion to dismiss the bill of complaint upon various grounds and the Court sustained the motion to dismiss and denied the injunction prayed for. In connection with this ruling the Chancellor below rendered a well considered opinion in which among other things it was stated that it was admitted that the Ordinance does not attempt to impose a license on that part of the business done by the trucks of plaintiffs which is done by taking orders and subsequently bringing the products into Haines City and delivering the same, but that it only applies to that portion of the business done by plaintiffs in said City where the trucks, having the bakery products on them, and at the places of business of various prospective customers, take orders for such products and deliver same immediately from such trucks.

The legislative Charter of Haines City, Chapter 12790, Acts of 1927, in Section 115 thereof, authorizes the City Commission to impose license taxes, for the purpose of regulation or revenue, upon numerous occupations, businesses and privileges conducted within the City. Ordinance No. 160, adopted under this general power, requires a whole-

sale merchant, "including ambulatory," selling to the retail merchant direct from stock, to take out a license of $25.00 annually for each place of business, and provides that "each and every vehicle, truck, R. R. car, or stand, shall be construed as a separate place of business." .

Appellants contend that Chapter 18011, of the Acts of 1937, is a general state law which imposes State and County license taxes upon a broad field of businesses and professions, and authorized the city in which the businesses are located to impose additional license taxes except when otherwise provided by the Act or other law, and that the effect of said Act, and especially of Section 5 thereof, was and is to repeal or supersede that part of the city ordinance above referred to by which, Haines City attempted to impose a license tax upon the business of plaintiffs above set forth. Said Section 5, of Chapter 18011, reads in part as follows:

"Section 5. Every person engaged in the business of trading, buying, bartering, serving or' selling tangible personal property as owner, agent, broker, or otherwise, shall pay a license tax of $25.00 (which shall entitle him to maintain one place of business, stationary or movable) and shall pay $25.00 for each additional place of business, provided that the said twenty-five dollar license tax shall not be required for any place of business licensed under the provisions of Chapter 16848, Laws of Florida, Acts of 1935. Wholesalers and others who do not pay a license tax calculated wholly or in part on gross receipts from their sales and who keep a stock of merchandise for sale shall pay an additional tax of $1.50 for each thousand dollars of their stock of merchandise, (other than petroleum products.) *Vehicles used by any person for the sale and delivery of tangible personal property at wholesale from his established place of business on which a license is paid, shall not be construed to be separate places of business and no license*

*may be levied on such vehicles or the operator thereof as salesmen or otherwise, by the State or any County or Municipality, any other law to the contrary notwithstanding."* (Italics supplied.)

It will be observed that Section 5 of said Act imposes a State and County license tax of $25.00 upon all persons engaged in the business of selling tangible personal property at retail or wholesale, "which shall entitle him to maintain one place of business, stationary or movable," and "shall pay $25.00 for each additional place of business," but adds that: "Vehicles used by any person for the sale and delivery of tangible personal property at wholesale from his established place of business on which a license is paid shall not be construed to be a separate place of business and *no license may be levied on such vehicle or the operator thereof as salesman or otherwise, by the State or any County or Municipality, any other law to the contrary notwithstanding."*

Section 2 of said general statute provides for a county license tax of fifty per cent. of the State license tax, and then adds: "Provided that incorporated cities and towns may impose such further license taxes of the same kind upon the same subjects as they may deem proper, *except when otherwise provided by this Act or other law,* but the license taxes so imposed shall not exceed fifty per cent of the State license tax, *except as otherwise authorized by law."* (Italics ours.)

Said Chapter 19011 is a broad general statute and contains 39 sections, but it does not purport to cover the entire field of license taxes, nor to afford a new revision of the entire subject of licenses; nor does it contain any general repealing clause.

Counsel for the city shall call attention to, and emphasize, Sections 38 and 39 of said general Act, which read as follows:

"Section 38.   That Sections 803 to 886, both inclusive; 890 to 899, both inclusive; 901 to 910, both inclusive; 913 to 964, both inclusive; 969, 971, 974 to 985, both inclusive; 988 to 993, both inclusive; 995 to 1005, both inclusive; of the Revised General Statutes of Florida 1920; and Chapter 14491 and Chapter 14528, Laws of Florida, Acts of 1929; and Chapter 16801, and Chapter 17167, Laws of Florida, Acts of 1935 are hereby repealed."

"Section 39.   That nothing herein shall be construed to repeal any license tax now imposed by law and not specifically repealed hereby."

In the case of Stewart v. DeLand - Lake Helen S. R. & B. Dist., 71 Fla. 158, 71 So. 42, this Court reviewed our earlier Florida cases, and arrived at certain principles of statutory construction, of interest here, which have since been followed by this Court, and which are concisely stated in the first nine headnotes to that case, as follows:

"1.   The maxim of *leges posteriores priores contrarias abrogant* is not applicable to cases where the precedent Act is special or particular, and the subsequent Act is general, the rule being that a later general Act does not work any repeal of a former particular statute.

"2.   In the construction of general and special Acts the maxim *generalia specialibus non derogant* applies, and a general Act will not be held to repeal or modify a special one embraced within the general terms of the general Act, unless the general Act is a general revision of the whole subject, or unless the two Acts are so repugnant and irreconcilable as, to indicate a legislative intent that the one should repeal or modify the other.

"3.   One statute will not be held to repeal a former one unless there is a positive repugnancy between the two, or the latter was clearly intended to prescribe the only rule

which should govern the case provided for, or it revises the subject matter of the former, or expressly repeals it.

"4. The invariable rule of construction in respect to the repealing of statutes by implication is that the earliest Act remains in force, unless the two are manifestly inconsistent with and repugnant to each other.

"5. Laws should be construed with reference to the Constitution and the purpose designed to be accomplished, and in connection with other laws *in pari materia,* though they contain no reference to each other.

"6. Where one statute in comprehensive terms covers a subject and another later statute embraces only a particular part of the same subject, the two should be construed together unless a different legislative intent appears; and the statute relating to the particular part of the general subject will operate as an exception to or qualification of the general terms of the more comprehensive statute to the extent only of the repugnancy, if any.

"7. While statutes may be impliedly as well as expressly repealed, yet the enactment of a statute does not operate to repeal by implication prior statutes unless such is clearly the legislative intent.

"8. An intent to repeal prior statutes or portions thereof may be made apparent when there is a positive and irreconcilable repugnancy between the provisions of a later enactment and those of prior existing statutes. But the mere fact that a later statute relates to matters covered in whole or in part by a prior statute does not cause a repeal of the older statute.

"9. If two statutes may operate upon the same subject without positive inconsistency or repugnancy in the practical effect and consequences, they should each be given the effect designed for them unless a contrary intent clearly appears."

The principles thus laid down were, and still are, closely in line with the weight of authority in this country. See 59 C. J. 904-924, 931-936.

Counsel for appellees rely strongly upon the opinion and decision of this Court in Sanders v. Howell, 73 Fla. 563, 74 So. 802, which cites with approval the above case, headnotes to which we have quoted. In the Sanders case, it appears that an ordinance of the City of Pensacola, enacted under the general licensing power contained in its legislative charter, imposed a license upon dairymen or other persons selling or delivering milk or cream in said city, whereas the general Act there involved provided that all farm and grove products, and products manufactured therefrom, when offered for sale or sold by the farmer or grower producing said products, "shall be exempt from all forms of license tax, State, County and Municipal." This general Act, like the one now before us, contained no general repealing clause. The Court held that the general Act did not operate a repeal of the licensing provisions of the Pensacola charter Act. Mr. Chief Justice BROWNE filed a vigorous dissenting opinion. On petition for rehearing the Court said that the majority opinion was controlled by Ferguson v. McDonald, 66 Fla. 494, 63 So. 915; that the general Act under consideration "does not expressly refer to or repeal any existing law"; that the local or special law was applicable to the subject involved, and that, under Section 24, Art. III, of the Constitution, the general law is not applicable, "when local or special laws are provided by the Legislature that may be inconsistent therewith."

The case of Ferguson v. McDonald, cited in the Sanders case, *supra,* involved a license of $100.00 per year imposed by the City of Miami, under its general licensing power, on Telegraph Companies. The charter Act in that connection provided that the amounts of such licenses should be

fixed by city ordinances," which amounts shall not be dependent upon a general state revenue law." The general state revenue law provided that telegraph systems should pay a license tax to the Comptroller of fifty cents per mile, one-half to go to the counties through which the line ran in proportion to the mileage in each county, and that "no further license shall be imposed by any county or municipality." But another portion of the Act also provided that "Nothing in this Act shall be construed as in any way abridging or limiting the powers which have been granted to any municipal corporation by special Act or charter Act for the purpose of requiring the payment of license taxes." The court held that this latter provision, considered in connection with the organic power to control municipal powers by special or local laws, made the license imposed by the city legal. The Court also quoted Section 24 of Art. III of the Constitution. However, the fourth headnote reads:

"When there are valid local or special laws relating to the powers and government of particular municipalities that are *in conflict* with the general statutory law, such local or special laws prevail."

The constitutional provision uses the word "inconsistent." But undoubtedly the decision of the case was correct, in view of the very language of the general Act itself, above quoted.

However, the majority opinion in the Sanders v. Howell case quotes with express approval from that portion of the opinion in Stewart v. DeLand and Lake Helen S. R. & B. District, *supra,* wherein it was said:

"In the construction of general and special Acts the maxim *generalia specialibus non derogant* applies, and a general Act will not be held to repeal or modify a special one embraced within the general terms of the general Act, unless the general Act is a general revision of the whole

subject or unless the two Acts are so repugnant and irreconcilable as to indicate a legislative intent that the one should repeal or modify the other."

"One statute will not be held to repeal a former one unless there is a positive repugnancy between the two, or the latter was clearly intended to prescribe the only rule which would govern the case provided for, or it revises the subject matter of the former, or expressly repeals it."

Thus the rules of construction enunciated in the Sanders case were substantially the same as those already established by previous decisions. It thus appears that a special Act will not be repealed, in whole or in part, where it is merely *inconsistent* with a subsequent general Act, but such repealing effect only occurs when it is in *direct conflict with and clearly repugnant to* the general Act. And even when such repugnancy exists, the later general Act will not repeal the special or local Act when the general Act, by its terms, evidences a clear legislative intention to the contrary.

In State v. Sanders, 79 Fla. 835, 85 So. 333, this court said:

"In other words, if a special or local law and a later general law relating to the powers of a municipality are merely inconsistent in their respective provisions, and the general law does not in some express terms repeal or supersede the local law, the latter will prevail within its proper sphere of operation, *unless an intent to repeal or supersede the local law clearly appears in the general law.*" (Italics ours.)

The cases of Stewart v. DeLand and Lake Helen S. R. & B. Dist., *supra,* and the cases of Sanders v. Howell and State v. Sanders, *supra,* and the rules of construction therein enunciated, have been frequently followed and quoted with approval by this Court. It is not necessary to cite the cases.

Counsel for appellant rely strongly upon the case of Langston v. Lundsford, 122 Fla. 813, 165 So. 898. In that

case Panama City, acting under a charter licensing power similar to that possessed by Haines City, passed an ordinance imposing a license upon persons engaged in the business of soliciting and taking orders for alcoholic liquors. Subsequently a general State liquor licensing law was passed, designed to cover the field of both regulation and taxation of the manufacture, distribution and sale of all beverages containing more than one per cent. of alcohol. In that case, the Court said:

"The general rule that a general Act will not be held to impliedly repeal or modify a special or local one, is subject to the qualification that this rule does not apply where the general Act is a general revision of the whole subject, or where the two Acts are so repugnant and irreconcilable as to indicate a legislative intent that the one should repeal or modify the other. Sanders v. Howell, 73 Fla. 563, 74 So. 802; State v. So. Land Co., 45 Fla. 374, 33 So. 999; Stewart v. Special Road Dist., 71 Fla. 158, 71 So. 42; State v. Sanders, 79 Fla. 835, 85 So. 333.

"But here Section 7 of the state statute expressly provides that no tax shall be placed on the manufacture, distribution, transportation, importation or sale of such beverages by way of license, excise, or otherwise, by any municipality, anything in the municipal charter to the contrary notwithstanding, 'except as herein expressly authorized.' That provision disposes of this case, clearly showing the legislative intent that no such ordinance as the one here in question should be adopted or enforced by any municipality in the State."

The general Act construed in Langston v. Lundsford, did contain a general repealing clause but the Court did not mention it in its opinion, as the legislative intent was clearly

shown by the terms of the general Act without resorting to the general repealing clause, which was merely an additional *indicia* of such legislative intent. Indeed, a general Act may, and frequently does, operate to repeal a repugnant local or special law, though the general Act contains no general repealing clause, where the legislative intent to repeal all·conflicting local or special laws is made plain by the terms and purposes of the general Act.

Thus in Anderson v. Wentworth, 75 Fla. 300, 78 So. 265, the general comprehensive Act of 1917, to license and regulate the running of motor vehicles on the public highway, was held to repeal a city ordinance in conflict therewith. The general Act covered the entire subject and made it "unlawful for any county or municipality to collect any license or registration fee on any motor vehicle" except vehicles used for hire. True, the general Act contained a general repealing clause, but it is doubtful that this Court would have reached a different conclusion if that clause had been omitted.

Likewise in State, *ex rel.* Greeson, v. Roberts, 126 Fla. 114, 170 So. 457, the state statute relating to slot machines was held to deprive the City of Jacksonville of the power to impose a license on coin-operated devices. In that case the Court, speaking through Mr. Justice TERRELL, said:

"Chapter 17257, Acts of 1935, is the latest expression of the Legislature on the subject of licensing slot machines and coin operated devices, it covers the whole subject matter fully, it defines a different policy from that heretofore in force, it sets out in terms the amounts that may be imposed as license taxes by the state, county, and municipality, and its provisions are such as to expressly repeal every other law on the subject. State, *ex rel.* Bradford, v. Stoutamire, 98 Fla. 486, 123 So. 834, and cases therein cited;

State, *ex rel.* Baker, v. McCarthy, 122 Fla. 749, 166 So. 280."

In that case, the general Act contained a general repealing clause, but its intent to preempt and occupy the entire field was manifest from the affirmative provisions of the Act.

The general Act construed in City of Orlando v. Gill. 174 So. 224, 128 Fla. 139, also dealt with one particular subject. It contained a general repealing clause as to conflicting laws, to which was added: "But this shall not be construed as repealing any law consistent herewith." The Act, adopted in 1935, prescribed a certain sale of licenses to be paid for the operation of pool and billiard halls according to the number of tables, and provided that any incorporated city or town might impose a license tax not to exceed fifty per cent of the state license. The city had theretofore adopted an ordinance imposing a higher scale of license fees under a charter power given by special Act which authorized the city to impose license taxes and fix the amounts thereof "without regard to any of the provisions of any general revenue law now in force or hereafter to be enacted which does not specifically repeal this Act." This Court, speaking through Mr. Justice BUFORD, said:

"We construe this Act to mean that it fixes a state policy for the licensing of pool and billiard halls in this state and that in so far as it limits the license which may be imposed by a municipality for the privilege of operating pool or billiard halls it supersedes all special legislative Acts theretofore passed inconsistent with the provisions. It is not necessary for us to go beyond this jurisdiction for authority for this holding. See State, *ex rel.* Greeson, v. Roberts (Fla.), 170 So. 457."

It thus appears that in this group of cases—Langston v. Lundsford, Anderson v. Wentworth, State, *ex rel.* Greeson, v. Roberts, and City of Orlando v. Gill—the court was dealing with general laws that were intended to completely cover the subject dealt with, and which were manifestly intended also to define a new or different legislative policy with reference thereto. It so happens also that each of said general Acts emphasized this evident legislative intent by embracing a general repealing clause. The general Act now before us for consideration does not, in our opinion, fall entirely within this group of cases, in that the Act as a whole does not completely cover the subject of licenses, nor does it contain a general repealing clause. But certain particular provisions of the Act, considered by themselves, are apparently, from the language used, intended to prescribe an exclusive state rule or policy to govern those particular matters, any and all local or special laws to the contrary notwithstanding. Whether this apparent intent was nullified by other sections of the Act evidencing a contrary intention, we will presently consider. Indeed, appellants do not contend that Chapter 18011 was intended to cover the whole licensing field, or to be a general revision of all license laws or of the powers of municipalities. Their position is that, *except as otherwise specifically provided by the Act*, the license laws and powers of municipalities were *not* repealed or superseded, and they cite the proviso contained in Section 2 of the Act, hereinabove quoted, in support of this position. But they do contend that, in order to operate as a repeal of conflicting local or special laws, it is not necessary that the Act cover the entire field of license taxes for every possible subject; but that it is sufficient to have that effect as to those particular subjects which are dealt with in the Act, with respect to which an intention to repeal special laws in conflict therewith is plainly mani-

fested, such, for instance, as the provision of the Act respecting the imposition of license taxes upon trucks used by a person for the sale and delivery of tangible personal property at wholesale from his established place of business on which a license is paid.

As between two general Acts, where a general statute covers the whole subject matter of an earlier Act, and was evidently intended to be a revision of, or substitute for, the earlier Act, although it contains no express words to that effect, it operates as a repeal of the earlier Act to the extent that its provisions are revised and supplied, thus giving effect to the evident legislative intention, even though the later Act contains no express repealing clause. State v. Stoutamire, 98 Fla. 486, 123 So. 834, and cases cited. And this may be true even where the later Act covers a broader field than the earlier Act. Sparkman v. State, 71 Fla. 210, 71 So. 34. See also Jernigan v. Holden, 34 Fla. 530, 16 So. 413; Dees v. Smith, 55 Fla. 652, 46 So. 173. The intent of a statute is to be determined by a consideration of the language used, the subject matter, the purpose designed to be accomplished, and all other relevant and proper matters that may assist in ascertaining the legislative intent. Sparkman v. State, *supra.*

As was said by Mr. Chief Justice BROWNE, in his dissenting opinion in Sanders v. Howell, *supra:* "The rules governing the construing of legislative enactments are prescribed for the purpose of ascertaining the legislative intent, and should not be applied to thwart it." And as was said by Mr. Justice WHITFIELD in another case, Peoples Bank v. Arbuckle, 82 Fla. 479, 90 So. 458, "The intent of the statute is the law, and that intent should be duly ascertained and effectuated." This is the fundamental rule of construction to which all other rules are subordinate.

In 59 C. J. 909, 912, it is said:

"It will be presumed that the Legislature, in enacting a statute, acted with full knowledge of existing statutes relating to the same subject; and where express terms of repeal are not used, the presumption is always against an intention to repeal an earlier statute, unless there is such inconsistency or repugnancy between the statutes as to preclude the presumption, or the later statute revises the whole subject matter of the former.

"Where a statute expressly repeals specific Acts, there is a presumption that it was not intended to repeal others not specified. In such case there is implied approval of the statutes not specified, as well as evidence of an intention to leave them undisturbed, and the doctrine of implied repeal does not apply."

"Where two legislative Acts are repugnant to, or in conflict with, each other, the one last passed, being the latest expression of the legislative will, will, although it contains no repealing clause, govern, control, or prevail, so as to supersede and impliedly repeal the earlier Act to the extent of the repugnancy, provided the conflict, inconsistency, or repugnancy is of the character and degree requisite to the application of the rule."

And in 59 C. J. 931-934, it is said:

"While the rule undoubtedly is that a general affirmative Act, or the general provisions of an Act, without express words of repeal, ordinarily will not repeal or affect a previous special or local Act, or the special or particular provisions of a prior Act, on the same subject, yet it is not a rule of positive law, but one of construction only; a special Act may be impliedly repealed by a general one, and the question whether it has been so repealed is always one of legislative intention. In accordance with this rule, the presumption is that a general Act does not repeal a local or

special statute. The rule and presumption may apply not only where the two Acts are not inconsistent or repugnant, but even where they are somewhat inconsistent, or even though the terms of the general law are broad enough to include the cases embraced in the special or local Act. They apply unless a different legislative intent is plainly, clearly and unequivocally manifested, as where the two Acts are irreconcilably inconsistent or repugnant, or where the general Act not only covers the whole subject matter of the special one, but is also intended to contain all the law on the subject and to be exclusive, or to take the place of the special Act, or is clearly intended to establish a mandadatory and uniform rule or system for the whole state. Also a construction in favor of an implied repeal of a local, special, or specific Act by a general one will not be adopted unless it is absolutely necessary in order to give the words of the general Act any meaning at all.

The intent of a general statute to repeal or supersede a special statute relating to a particular municipality will not be implied *unless the repugnancy between their provisions is so irreconcilable that no reasonable field of operation for either can be found without trenching on the ground covered by the other,* or when the manifest intention of the later enactment is to revise the whole matter covered by disconnected general and special enactments, to furnish a substitute for all, and to introduce *a new and exclusive rule* upon the subject. 59 C. J. 934; City of St. Petersburg v. Pinellas Power Co., 87 Fla. 315, 100 So. 509.

We have reviewed these rules of statutory construction at some length because the instant case presents what almost amounts to an enigma, and also because of the frequency with which cases are brought to this court involving this general question of whether a general statute ex-

pressly or impliedly repeals, supersedes or suspends, in whole or in part, some previous local or special Act.

The ordinance adopted in 1934, under the general licensing power granted to Haines City by its legislative charter Act, imposed a license upon "wholesale merchants (including ambulatory)" of $25.00 annually for each and every place of business, and provided that each and every vehicle or truck should be construed to be a separate place of business, whereas Section 5 of the general Act, Chapter 18011, Laws of 1937, imposed an annual license tax of $25.00 on each person engaged in the business of selling tangible personal property, as owner or agent, which would entitle such person to maintain *one* place of business, stationary or movable, and also $25.00 annually for each additional place of business; wholesalers and others not paying a license tax on gross receipts and who keep a stock for sale to pay an additional tax of $1.50 per $1000.00 of stock; and adding that: "Vehicles used by any person for the sale and delivery of tangible personal property at wholesale from his established place of business on which a license is paid, shall not be construed to be separate places of business, and no license may be levied on such vehicles or the operator thereof as salesmen or otherwise, by the State or any County or Municipality, any other law to the contrary notwithstanding."

If the foregoing were the only portions of the general statute to be considered, we would, in the light of the above authorities, unhesitatingly hold that the general Act, impliedly repealed or suspended the authority of the City, under its licensing power granted by special charter Act, to impose by ordinance a license tax on each and every truck operated by a wholesaler used for the sale and delivery of tangible personal property from his established place of business on which a license had been paid, treating each

vehicle or truck as a separate place of business, as attempted to be authorized by the City ordinance here involved, because the ordinance in that respect is clearly and irreconcilably in conflict with and repugnant to the provisions of the later general statute above quoted from. Indeed the statute expressly says that such trucks "shall not be construed as separate places of business," and expressly prohibits "any county *or municipality*" from levying a license thereon, "any other law to the contrary notwithstanding." The ordinance in that respect is not merely "inconsistent" with the quoted provisions of the general statute; it is directly repugnant thereto. And the legislative intent, which in the last analysis is the cardinal rule by which this case must be determined, is clearly manifested by the language used in said Section 5.

Now, does Section 2 of the ordinance, quoted earlier in this opinion, rebut the intent so clearly shown by Section 5? While somewhat equivocal, in our opinion, if anything, it tends more strongly to support the plain intent of Section 5 than it does to support the contentions of appellees to the contrary. The words "or other law," and "except as otherwise authorized by law," as used in said Section 2, may very well have meant some other *law* enacted by the Legislature as distinguished from a mere city ordinance passed under the general licensing power contained in a city charter Act. This special charter Act, and the *general* power therein contained to impose licenses on businesses within the city, were not themselves repealed, but the intent of Section 5 was to limit or restrict the exercise of, or at most to partially supersede or suspend, the general licensing power of any and all municipalities so as to exclude therefrom the power to impose licenses on trucks used for the purposes named in Section 5, as separate places of business, which *particular power* had never been ex-

*pressly* granted by this special charter Act. This new rule was manifestly intended by Section 5 to operate uniformly throughout the State, thus establishing a new State policy on that subject which any and all municipalities were prohibited from violating.

We come now to consider the effect of Sections 38 and 39.

Section 38 of this general Act expressly repeals numerous sections of the Rev. Gen. Statutes of 1920, and also Chapters 14481 and 14528, Laws of 1929, Chapter 16801 and Chapter 17167, Laws of 1935. All of these laws thus expressly repealed were *general* State statutes relating to and imposing various occupational license taxes, except Chapters 14528, 16801 and 17167, which were statutes imposing licenses on certain special classes of business, such as itinerant merchants (14528), beauty-parlors (16801) and pool and billiard halls (17167) respectively. None of these Acts so repealed were special or local Acts; none of them applied to any particular city.

The contention is that as this general statute expressly repealed certain specific general Acts, it must be presumed that it was not intended to repeal or modify any others not specified either special or general. There is a general rule, supported by the authorities, to the effect that where a statute expressly repeals specific Acts, the presumption is that it was not intended to repeal others not specified. But the argument based thereon as applied to this special charter Act or to the ordinance enacted thereunder, is weakened by the fact that the repealing clause in this general Act refers only to other *general* state statutes, dealing, like the one here involved, with occupational license taxes imposed on certain businesses and occupations throughout the State, or potentially applicable throughout the State.

Section 39 of the Act provides: "That nothing herein

shall be construed to repeal any license tax now imposed by law *and not specifically repealed hereby.*"  (Italics ours.)

It is contended that this section, taken in connection with the preceding section, tends to rebut the intent so plainly expressed in Section 5 of the Act, unless the words "and not sepcifically repealed hereby" mean that the Legislature considered that it had, by embracing Section 5, specifically repealed or suspended any power that might theretofore have been vested in municipalities to impose license taxes on trucks, used by wholesalers for sale and delivery of their wares, as separate places of business.  Considering the Act as a whole, and the very definite and mandatory language used in Section 5, this latter must have been their intention.  Surely the Legislature did not mean, by failing to expressly designate and specifically repeal by Chapter number each and every one of the hundreds of special municipal charter Acts, *seriatim ad literatim,* to nullify the clear provisions of Section 5, which established a new and exclusive general rule on this particular subject, in these words :

"Vehicles used by any person for the sale and delivery of tangible personal property at wholesale from his established place of business on which a license is paid, shall not be construed to be separate places of business, and no license may be levied on such vehicles or the operator thereof as salesman or otherwise, by the State or any county *or municipality, any other law to the contrary notwithstanding.*"

Surely this language must have been considered by the Legislature as superseding or suspending the operative effect, of any special laws, or ordinances adopted under  general charter powers, contrary to said general law, as to this particular matter.

Admitting freely the closeness and difficulty of the question involved, our conclusion is that the Legislature did not,

by Sections 38 and 39, intend to nullify or set aside the plain intent of the language used in another section of the same Act, namely said Section 5 thereof:

But appellees contend that, even if given its plainly stated effect, this particular provision of Section 5 cannot be allowed to stand, because it permits a classification which is discriminatory, and repugnant to Sections 1 and 5 of Art. IX of our Constitution, in that it authorizes a license upon a local wholesale merchant doing business within the city, but prohibits the city from imposing a license on a non-resident wholesale merchant doing business by trucks within the city; that this classification is based solely on the fact that one wholesale merchant has an established place of business within the city while the other has not; citing Hamilton v. Collins, 114 Fla. 276, 154 So. 201. But, if the city is a proper party to raise this question, we do not think the contention is well founded, nor that the case cited is in point. We recognize the rule that businesses cannot be classified, for purposes of license taxation, merely upon their location. But that rule does not apply here, because the wholesale businesses located in Haines City may not, under this general Act, be taxed in a manner different from the businesses of wholesalers located in any other city in the State with regard to the exemption from license taxation on trucks operated for sale and delivery of goods from an established place of business on which a license is paid.

Our conclusion is that the Legislature intended that the mandatory general provisions of Section 5 of this Act should be given effect, and that it should suspend or supersede the operative effect of any provisions in any special municipal charter Acts, or ordinances passed thereunder, which are plainly in conflict with, or repugnant to, said Section 5, such as the particular ordinance of the City of

Haines City here involved. The wisdom or fairness of the statute was a question for the Legislature, and not this court, to determine.

Reversed and remanded.

ELLIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.

CHIPMAN, J., dissents.

WHITFIELD, J.—Section 38 of Chapter 18011, Acts of 1937, specifically *repeals* enumerated sections and chapters of general state license statutes, and Section 39 expressly enacts "that nothing herein (meaning in the Chapter) shall be construed to *repeal* any license tax *now* imposed by law and not specifically *repealed* hereby" (meaning by the Act). The laws specifically *repealed* are stated in Section 38 of the Act, none of which are local or special laws. The Act does not specifically repeal *all* conflicting laws, but Section 38 does expressly repeal stated statutes, and Section 39 expressly repeal stated statutes, and Section 39 expressly provides that *nothing in the Act shall be construed to repeal* any license tax law not specifically repealed by the Act.

Section 5 of Chapter 18011, Acts of 1935, contains a provision that:

"Vehicles used by any person for the sale and delivery of tangible personal property at wholesale from his established place of business on which a license is paid, shall not be construed to be separate places of business, and no license may be levied on such vehicles or the operator thereof as salesman or otherwise, by the State or any county or municipality, any other law to the contrary notwithstanding."

Such quoted provision does not *repeal* any conflicting law; but it should be given its intended effect as shown by its language and the connection in which it is used, which is that *notwithstanding any other law to the contrary,* no

license tax by the State or any county or municipality may be levied on vehicles or the operators thereof as stated in the particular quoted provision.

The legal effect of the quoted particular provision as used and considered in connection with Sections 38 and 39, is not to repeal but to suspend or supersede, until otherwise duly provided, all conflicting provisions of general laws, if any, levying State or county license taxes that are not specifically repealed by Section 38 of the Act, and to suspend or supersede all provisions of municipal charters or other special or local laws or duly authorized ordinances, relating to municipal taxation of vehicles and their operators when the vehicles are used and the operators thereof are engaged as stated in the particular quoted provision of Section 5 of Chapter 18011, Acts of 1937. See Mernaugh v. City of Orlando, 41 Fla. 433, 27 So. 34; 59 C. J. 940. Section 90 (74) C. G. L. relates to repealed statutes. The policy of the provision of the statute was determined by its enactment. Courts have no part or responsibility in determining the policy of statutes.

BROWN and BUFORD, J. J.,concur.

CHAPMAN, J. (dissenting).—I dissent from the majority opinion filed in this cause for the following reasons:

First: Section 39 of Chapter 18011, Acts of 1937, provides, "That nothing herein shall be construed to repeal any license tax now imposed by law and not specifically repealed hereby." Section 5 of Chapter 18011, Acts of 1937, provides:

"Vehicles used by any person for the sale and delivery of tangible personal property at wholesale from his established place of business on which a license is paid, shall not be construed to be separate places of business and no license may be levied on such vehicles or the operator thereof as

salesmen or otherwise, by the State or any County or Municipality, any other law to the contrary notwithstanding."

The majority opinion holds that the above quoted portion of Chapter 18011, Acts of 1937, is legally sufficient to strike down Sections 115 and 116 of Chapter 12790, Laws of Florida, 1927 (the present charter for Haines City), which reads as follows:

"Sec. 115. LICENSES.—The City Commission is authorized to levy and impose license taxes by ordinance, for the purpose of regulation and revenue, upon all occupations, and upon any and all privileges and to create and fix the amounts to be paid; to provide for the collection of the same, and to provide penalties for failure or refusal to pay such license taxes. All such license taxes so imposed shall constitute a legal indebtedness to the City, which may be recovered in any Court of competent jurisdiction and no property of such debtor shall be exempt from forced sale, after due process of law, for such indebtedness. The City Commission may, by ordinance, provide for licensing, the keeping of dogs, and for the destruction of dogs, when the owner or keeper thereof shall not comply with the regulations prescribed by ordinance in effect thereto, and for the punishment of persons violating the city ordinance upon this subject.

"Sec. 116. PERIOD COVERED FOR LICENSES.—Licenses shall be issued for the periods, and be transferable as provided by the General Laws for State License. The agent or agents of non-resident proprietors shall be severally responsible for carrying on business in like manner as if they were proprietors. The fact that any person, firm or corporation reporting himself or itself as engaged in any business, calling or profession or occupation for the transaction of which a license is required, or that person exhibiting a sign or advertisement indicating engagement in such busi-

ness, calling or profession or occupation, shall be conclu-
sive evidence of the liability of such person, firm or corpo-
ration to pay a license."

Section 8 of Article VIII of the Constitution of Florida,
gave the Legislature the power to enact Chapter 12790, Acts
of 1927. The question as to whether the general Act, being
Chapter 6924, Acts of 1915, should prevail over the Charter
provision of the City of Pensacola, being Chapter 6087,
Acts of 1909, was before this Court in the case of Sanders
v. Howell, 73 Fla. 563, text p. 570, 74 So. 802, when this
Court, speaking through Mr. Justice SHACKLEFORD, said:

"We fully approve of this holding. We would also call
attention to the fact that Chapter 6924 contains no repeal-
ing clause. Unless, then, Chapter 6924 and Section 1 of
Chapter 6087 of the Acts of 1909 are so repugnant and
irreconcilable as to indicate a legislative intent that the
former should repeal *pro tanto* or modify the latter, both
statutes must be permitted to stand. In Florida East Coast
Ry. Co. v. Hazel, 43 Fla. 263, 31 South. Rep. 272, 99 Amer.
St. Rep. 114, we held that 'Repeals by implication are not
favored, and in order that the court may declare that one
statute repeals another by implication, it must appear that
there is a positive repugnancy between the two, or that the
last was clearly intended to prescribe the only rule which
should govern the case provided for, or that it revises the
subject-matter of the former.' See also State v. County
of Gadsden, 63 Fla. 620, 58 South. Rep. 232. In Ferguson
v. McDonald, 66 Fla. 494, 63 South. Rep. 915, we held that,
'Where there are valid local or special laws relating to the
powers and government of particular municipalities that
are in conflict with the general statutory law, such local or
special laws prevail.' Under these authorities, we must
hold that Section 1 of Chapter 6087 of the Acts of 1909

has not been modified or repealed by Chapter 6924 of the Acts of 1915."

It appears that every question raised as to the repeal of the charter provisions of the City of Haines City as stated in the majority opinion is fully answered by Sanders v. Howell, *supra.*

Second: This Court has cited with approval the rule expressed in Sanders v. Howell, *supra,* in the following cases: Stephens v. Anderson, 75 Fla. 575, 79 So. 205; State, *ex rel.* Young, v. Duval County, 76 Fla. 180, 79 So. 692; *Ex Parte* Davidson, 76 Fla. 272, 79 So. 727; State, *ex rel.* Triay, v. Burr, 79 Fla. 290, 84 So. 61; City of St. Petersburg v. Pinellas Power Co., 87 Fla. 315, 100 So. 509; City of Apalachicola v. State, 93 Fla. 921, 112 So. 618; Abell v. Town of Boynton, 95 Fla. 984, 117 So. 507; West v. Town of Lake Placid, 97 Fla. 127, 120 So. 361; State v. City of Miami, 101 Fla. 292, 134 So. 608; City of Lake Alfred v. Lawless, 102 Fla 84, 135 So. 895; Flamingo Park Warehouse Co. v. Solberg, 113 Fla. 45, 151 So. 281; Critchlow v. Maryland Casualty Co., 116 Fla. 226, 156 So. 440; Broward v. Garrison Investment Corporation, 121 Fla. 45, 163 So. 212; State, *ex rel.* Muldoon, v. McCarthy, 112 Fla. 519, 165 So. 700; Langston v. Lundsford, 122 Fla. 813, 165 So. 898; Scott v. Stone, 129 Fla. 784, 176 So. 852.

The majority opinion violates the doctrine of *stare decisis.*

Third: In the case of State v. Sanders, 79 Fla. 835, 85 So. 333, this Court considered and had before it the existence or non-existence of a general repealing clause. It held that if the general law does not in some express terms repeal or supersede the local law, the local law will prevail, and this rule should be applied to the case at bar. It

cannot strike down a statute by implication as is attempted here.

Fourth: In Langston v. Lunsford, 122 Fla. 813, 165 So. 898, based on, Chapter 16774, Acts of 1935, there is contained a general repealing clause, whereas Chapter 18011, Acts of 1937, which seeks to strike the taxing authority of the City of Haines City, contained no general repealing clause. The fact that the 1937 Legislature, by Chapter 18011, failed and omitted to place therein a general repealing clause is conclusive that it was not the intention of the Legislature to repeal Chapter 12790, Laws of 1927, charter of Haines City upon which the ordinance in question is predicated.

Fifth: In City of Orlando v. Gill, 128 Fla. 139, 171 So. 224, the general law controlled the subject of licensing pool halls and fixed the amount to be collected in the way of taxes for: (a) State; (b) county; (c) municipality; and contained the following clause, "All laws or parts of laws in conflict with or inconsistent herewith are hereby repealed and superseded. But this shall not be construed as repealing any law consistent therewith." It stands to reason that a different policy was before the Legislature with reference to "pool halls only" and the right of a municipality to tax the same. We find no such language in the repealing clause in Chapter 18011. Neither was it the intention of the Legislature to change the policy of business affecting the petitioners here and no intention is clear to deprive municipalities of this revenue.

We are forced to recognize the previous ruling of this Court in Sanders v. Howell, *supra*. The case of City of Orlando v. Gill has no bearing upon the case at bar. The case of Stewart v. DeLand-Lake Helen Special R. & B. Dist., 71 Fla. 158, 71 So. 52, has no application to the prin-

ciple of law involved in the case at bar, except fixing rules controlling a court in making statutory construction.

Sixth: This Court has held in a number of cases in testing the validity of, as well as in construing a statute, resort may be had if necessary to the history of the legislation, to the public history of the times in which it was passed, and it may be compared with cognate laws in order to determine its purpose, meaning and effect as an aid in determining its validity. See Sheip v. Amos, 100 Fla. 863, 130 So. 699; State, *ex rel.* Davis, v. City of Clearwater, 106 Fla. 761, 139 So. 377. This Court can take judicial notice of common knowledge prevalent in Florida previous to and at the time of the passage of Chapter 18011 by the 1937 Legislature. We find many of the municipalities of Florida financially embarrassed. In some instances municipalities were heavily involved with high rates of interest. . Many were financially unable to pay interest on bands or to extend the time of payment. Taxpayers of many of the cities and towns knew it was impossible to pay the heavy interest rate and declined to pay taxes. It was difficult to meet the current expenses of operating the towns and cities. Payrolls had not been met in many months, other items were in default and it was difficult to maintain the costs of government. The municipalities of the State organized and were before the 1937 Legislature begging for financial assistance at the very time of the passage of Chapter 18011. They represented that their bonds were in default, the taxpayers were on a strike, payrolls past due, current bill unpaid, suits being filed, and heavy costs of municipal government to meet. They asked the 1937 Legislature for financial aid from the gasoline tax, pointing out that the cities and towns in many instances formed connecting links on the State highway system of Florida; that if help was extended bonds could be stabilized, pay-

rolls met, current debts liquidated, the taxpayers would respond and that this policy would assist Florida and the nation in their financial rehabilitation program. The municipalities of Florida requested the 1937 Legislature to see that right, fairness and justice should prevail. It is difficult to conceive under these facts and circumstances that the limited resources of cities and towns should be further reduced by Chapter 18011. The members of the 1937 Legislature did not intend that the cities and towns of Florida should be deprived of this revenue.

Section 4 of the Declaration of Rights of the Constitution of Florida provides:

"All courts in this State shall be open, so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and right and justice shall be administered without sale, denial or delay."

If justice and right are to be administered in this cause the revenues of the City of Haines City shall continue in the future as in the past and the decree appealed from should be affirmed.

## On Petition for Rehearing

Brown, J.—It is contended that Section 5 of Chapter 18011, especially the last sentence of the first paragraph of said section, as construed by this Court, is unconstitutional as a violation of Section 16 of Article III of the Constitution, in that the title of the Act is not broad enough to cover such provisions. The title of the Act reads as follows:

"An Act Relating to License Taxes, Repealing Chapter 14491, and Chapter 14528, Laws of Florida, Acts of 1929; Repealing Parts of Chapter 2 of Title VI, of Division 1

of the Revised General Statutes of Florida, of 1920; Repealing Chapter 16801 and Chapter 17167, Laws of Florida, Acts of 1935; Imposing Certain License Taxes and Providing That License Taxes Shall Be a Lien on the Property of the Person Liable Therefor, Under Certain Circumstances."

It will be noted that the real subject of the Act, as expressed in the title, "An Act relating to license taxes," is broad and general in its scope, and it also appears that Section 5, and all of the provisions of said section, is "matter properly connected with the subject of the Act."

We are clearly of the opinion that Section 5 of the Act is not subject to the attack thus made upon it. See Grand Lodge Knights of Pythias v. Moore, 120 Fla. 761, 163 So. 108; State, *ex rel.* Adams v. Lee, 122 Fla. 639, 166 So. 249; Flint v. Duval County, 126 Fla. 18, 170 So. 587; Singleton v. Knott, 101 Fla. 1077, 133 So. 71; Spencer v. Hunt, 109 Fla. 248, 147 So. 282; Sheip Company v. Amos, 100 Fla. 863, 130 So. 699.

The generality of the title of a statute does not invalidate it so long as the title fairly comprehends and gives notice of the subject sought to be accomplished by the statute, when such generality is not deceptively employed to conceal incongruous provisions which are unrelated to the general subject of the Act. Whitney v. Hillsborough County, *supra;* State v. Sullivan, 99 Fla. 1070, 128 So. 478; State v. Bryan, 50 Fla. 293, 39 So. 829; State v. Bethea, 61 Fla. 60, 55 So. 550; Smith v. Chase, 91 Fla. 1044, 109 So. 94.

The title need not be an index to the body of the Act. *In re* DeWoody, 94 Fla. 96, 113 So. 677; Butler v. Perry, 67 Fla. 405, 66 So. 150.

The Court was justified in not considering this question in its original opinion, because it was not presented by the "question involved" as stated in the briefs of either the ap-

pellants or the appellees. However, it was discussed to some extent by appellees in their brief, and in view of the importance of the question, we have deemed it advisable to discuss it on this petition for rehearing. However, we consider the question thus presented so free from doubt, and Section 5 so clearly within the subject expressed in the title of the Act, that it is not necessary to grant a rehearing on this point, nor any of the other points raised by this petition for rehearing.

Petition for rehearing denied.

ELLIS, C. J., and WHITFIELD, TERRELL, BUFORD and CHAPMAN, J. J., concur.