QUESTION: Does s. 197.291, F. S., authorize the clerk of circuit court to distribute excess funds from a tax sale of land to the county in satisfaction of a recorded county welfare lien?
SUMMARY: The county welfare liens of Pinellas County, authorized by Ch. 63-1787, Laws of Florida, may be satisfied from excess funds resulting from a tax sale of land under s. 197.291(2), F. S. Your question is answered in the affirmative as qualified by the following discussion. Section 197.291, F. S., governs the disbursement of the proceeds of a tax sale. Subsection (2) of that section requires that, if the sale produces an amount in excess of the statutory bid, "[t]he clerk shall distribute the excess to the governmental units for the payment of any lien of record held by a governmental unit against the property." (Emphasis supplied.) The language "any lien of record" is nowhere qualified or limited. Standing alone, this broad language would seem to include recorded county welfare liens within its scope. This language must, however, be read in the context of general lien law. County welfare liens are authorized in Pinellas County by special act. See Ch. 63-1787, Laws of Florida. Under that act, the county may require the recipient of county welfare funds to execute a lien on all owned or after-acquired property to secure repayment of those funds. Thus, the consideration for a county welfare lien flows to the owner personally and not the res; it is a lien in the nature of a lien securing a private debt. To allow such a lien to be enforced in the manner provided by s. 197.291(2), supra, constitutes a substantial departure from previously well-established lien enforcement principles. Before the enactment of present s. 197.291(2) in s. 22 of Ch. 73- 332, Laws of Florida, only general tax and special assessment liens could be automatically satisfied from the excess proceeds of a tax sale. See s. 197.291(2), F. S. (1972 Supp.), which read in pertinent part: If the property is purchased for an amount in excess of the statutory bid of the certificate holder, the excess shall be paid over and disbursed by the clerk to the governmental units and agencies holding liens for general taxes upon the property for the payment of the liens in full, if the excess is sufficient for the purpose. . . . If any excess remains after the payment of all liens for general taxes upon the property and there are unpaid liens for special assessments held by any taxing district, the clerk shall pay the excess to the taxing district for the payment of the special assessment liens. . . . If, after all liens for general taxes and special assessments of the taxing districts upon the property are paid in full, there remains a balance of undistributed funds, the balance of the purchase price shall be retained by the clerk for the benefit of the legal titleholder of record. . . . (Emphasis supplied.) An earlier statute contained a similar distribution scheme. See s. 197.535(2), F. S. 1971. The Department of Revenue has promulgated an administrative rule governing the distribution of excess proceeds which adopts this distribution scheme. See F.A.C. s. 12B-1.348. This rule was promulgated after the passage of Ch. 73-332, supra, and presumably reflects the department's construction of that act. The department's rule and the earlier statutes are in harmony with the general principle that tax and special assessment liens are superior in dignity to all other liens and must therefore be satisfied first. See City of Tampa v. Lee, 151 So. 316 (Fla. 1933); Gailey v. Robertson, 123 So. 692 (Fla. 1929); ss. 170.09
and 197.056(2), F. S. An administrative rule is entitled to great weight in construing a statute, but it cannot stand if clearly contrary to the language of the statute. Cf. Greyhound Lines, Inc. v. Yarborough, 275 So.2d 1 (Fla. 1973); Southeastern Util. Service Co. v. Redding, 131 So.2d 1 (Fla. 1961). The present statutory language, "any lien of record held by a governmental unit," cannot be limited to tax and special assessment liens, if the words are given their ordinary meaning. It would have been relatively simple to leave the statute unchanged or to specify that only certain types of liens might be satisfied in this manner; the Legislature nevertheless chose language that is plainly nonexclusive. Changes in statutory language create a presumption that the substance of the statute is changed. Arnold v. Shumpert, 217 So.2d 116 (Fla. 1968); State ex rel. Triay v. Burr, 84 So. 61 (Fla. 1920). Given their common meaning, these provisions broaden the scope of automatic disbursement of the excess proceeds of a tax sale. Presumably the Legislature intended to provide the county lienholder a remedy that is not only more convenient but more effective. The purchaser of land at a tax sale receives title free of prior encumbrances, with certain exceptions not relevant here. See s. 197.271, F. S. Enforcement of a county welfare lien might therefore not be possible after a tax sale of the lienee's realty. The county would retain its right of action against the debtor, but recovery in this manner may be impractical. Automatic disbursement may be necessary to prevent the disappearance of the only effective remedy after a tax sale. The question remains whether the provisions of Ch. 63-1787, Laws of Florida, establishing county welfare liens permit their enforcement in this manner. If not, then an express or implied repeal or modification must be found. My reading of this law suggests that no enforcement remedy is excluded. Section 5 of the law permits the county commissioners to "enforce, reduce to judgment, satisfy, compromise, settle, subordinate, release, or otherwise dispose of any debt or lien hereby imposed." (Emphasis supplied.) Section 4 provides that the liens "shall be enforceable in the same manner as mortgages." I conclude, in light of the language in s. 5, that the s. 4 remedy is permissive and not exclusive. If this be the case, no express or implied repeal or modification is necessary. More to the point, however, when a special act and a subsequent general law operate in different areas, the courts will attempt to give effect to both. See American Bakeries Co. v. Haines City,180 So. 524 (Fla. 1938); State ex rel. Triay v. Burr, supra; and Stewart v. Deland-Lake Helen Special Road and Bridge Dist.,71 So. 42 (Fla. 1916). In Stewart the court looked to the titles of the two acts to determine their fields of operation. Applying that principle here, it is clear that Ch. 63-1787, relating to Pinellas County public welfare, does not operate in the same field as Ch. 73-332, relating to collection of ad valorem taxes. Giving effect to both laws within their respective fields, I conclude that s. 197.291(2), F. S., authorizes the satisfaction of a county welfare lien from the excess proceeds of a tax sale. Certain caveats must, however, accompany this conclusion. The satisfaction of the welfare lien from excess proceeds of a tax sale may be improper in the following situations: When the amount of the debt secured by the lien is unspecified or uncertain (i.e., where the lien is inchoate), and other specific lien interests exist; when outstanding private liens exist that would, in the absence of a tax sale, have priority over the county welfare lien; and when outstanding public liens exist that would, in the absence of a tax sale, have priority over the county welfare lien. Note that s. 197.291(2) provides for all public liens to be paid the excess pro rata in full satisfaction of the lien. Such a distribution might not be permitted when an outstanding special assessment lien exists, because special assessment liens ordinarily have priority over county welfare liens. One can reasonably question whether the Legislature, in passing an act relating to ad valorem tax collection, intended to alter these principles of lien law, and, if so, whether the act so applied would be valid. As these issues are outside the scope of your question, I decline to consider them here.