## Beal *v.* Erie Rd. Co.

(Decided November 20, 1935.)

*Mr. H. M. Rust* and *Mr. Lewis Brucker,* for plaintiff in error.

*Messrs. Henkel & Gongwer,* for defendant in error.

Montgomery, J. Error is prosecuted to this court from a judgment of the Court of Common Pleas of Richland county, Ohio, rendered on behalf of the defendant in error in an action wherein it had been sued for damages sustained by the plaintiff in error, who was the plaintiff below. Issues having been made, and a jury having been impaneled, and a statement of the case having been made by counsel for plaintiff below, a motion was made that the case be withdrawn from the consideration of the jury and a judgment rendered

for the defendant on the amended petition and the statement of counsel, for the reason that the amended petition and the opening statement did not show that there was any actionable negligence on the part of the defendant, and did show that the plaintiff was guilty of contributory negligence as a matter of law.

The record indicates that the motion was not sustained when made, but that counsel for defendant below then made a statement of the defendant's claim, and, thereupon, the court did sustain the motion previously made for judgment in favor of the defendant.

Counsel for plaintiff below in his opening statement read the amended petition and elaborated thereon to some extent, the claim made in the amended petition and the statement being in substance, that the Erie Railroad Company had, about the year 1931, erected across Federal Highway 30 and State Highway 202, west of the city of Mansfield, a certain overhead bridge for its use in crossing said highway; that the bridge as constructed had a center pier 4 feet in width, with a lane on each side of said pier 18 feet in width; that the highway, which to the west thereof was 20 feet in width, was widened, and commencing at a point 200 feet west of the bridge, going east, was gradually widened until it was 40 feet in width at the point where it reaches the railroad bridge. It was stated further that at the time of the accident, which was about 6 o'clock in the evening, on a dark stormy night, in a heavy snowfall, the plaintiff approached the bridge from the west; that there was no light on the bridge and no warning signals of any kind; that he drove his car straight forward until it reached the bridge and struck said center pier, and was severely injured in the manner described.

The claims of negligence, as stated, are that the defendant was negligent in putting the pier in the center of the highway where the traveling public, in order to avoid striking the bridge, would be compelled to

turn to the right immediately upon approaching the bridge, and was negligent in not having warning signs or lights at the time plaintiff's automobile approached the bridge.

The three questions involved are, first: Was there negligence in the construction of this bridge with a pier located in the center of the highway? Second: Was it incumbent upon the railroad company to keep this pier lighted to warn approaching travelers, and, third: Does this statement of counsel show negligence as a matter of law, which prevents a recovery?

Numerous cases are cited and commented upon by counsel, all of which have been considered by the court, and we have conducted an independent search of our own for authority covering these propositions. Only a few of the cases need comment. The one case in Ohio which, perhaps, comes nearer to sustaining the contention of the plaintiff in error than does any other case cited, or found in Ohio, or elsewhere, is that of *City of Hamilton* v. *Dilley,* 120 Ohio St., 127, 165 N. E., 713, where the driver of an automobile came in contact in the night season with a platform being constructed in the center of the street for the benefit of pedestrians, which platform was unlighted. However, the distinction between that case and the instant case is apparent, because the record in the *Dilley case, supra,* shows that there were a number of similar standards in the city of Hamilton, some of which were lighted, which fact of itself would tend to throw a traveler off his guard as to any unlighted platform. In the *Dilley case* the record shows that contributory negligence was not pleaded and was not made an issue, and the court in that case simply held that with all the facts considered it became a question for the jury to determine the responsibility of the city for the damages sustained by Dilley. Again, in the *Dilley case* the court was confronted with the proposition that Section 3714, General Code, imposes on munici-

palities the duty to keep the streets free from nuisances.

In the instant case there is no statutory duty imposed upon the railroad company to keep a highway, over which its tracks pass, free from obstruction. It was not unlawful for the railroad company to construct this bridge with this pier as it was constructed. The amended answer and the statement of counsel for defendant below, which appear upon the record, show that this overhead bridge was constructed in accordance with plans made, adopted and approved by the Director of Highways. Of course it may be contended that the amended answer and the statement of the defendant below are not to be considered in connection with this motion which was sustained. However, the presumption, regardless of the authority, is that the construction was lawful, and there is no allegation in the petition that the construction was unlawful. Such a construction of bridges, with supporting piers in the center of highways, is not an unusual thing. It is a situation which confronts users of automobiles who to any great extent travel the highways of this or any other state. It is an approved construction, and the necessity for it will readily be recognized in view of the length of the span of a railroad bridge over very wide highways and streets.

Was the railroad company negligent at this time? No statutory requirement for such lighting is pleaded or stated, and none exists. Constructed lawfully and constructed properly, we fail to see how negligence can be predicated upon a failure to maintain a lighting system upon this bridge or pier, or upon a failure to light them at any particular time.

Counsel for plaintiff in error argue that the obligation to do this lighting may be inferred from Section 1229-17, General Code, which is in part as follows:

"After the completion of the work of constructing or of reconstructing, widening or re-aligning of a sep-

arated crossing by the director under and in accordance with the provisions of this act, the separated crossing and approaches thereto so constructed shall be kept in repair as follows: When the public way crosses the tracks of any such company or companies by a structure carrying the highway over such tracks the cost of maintenance shall be borne by the state. When the public way passes under the tracks of any such company the cost of maintaining the bridge and its abutments shall be borne by such company, * * *.''

Such would seem to us a forced construction of this section. The word ''maintain'' in this connection seems to us to mean to keep in repair, to keep in substantially the same condition in which it was constructed under the authority and approval of the Highway Commissioner. If it were intended that there should be a light upon such construction, or that a guard of any kind should be maintained near it, the statute would have so provided.

We fail to see how this amended petition states any cause of action against the railroad company. But, regardless of whether or not any actionable negligence is stated against the railroad, it was in any event entitled to have its motion sustained if the statement of plaintiff's counsel showed that plaintiff was, as a matter of law, guilty of negligence. This claim of negligence is based upon Section 12603, General Code, which is in part as follows:

''No person shall operate a motor vehicle in and upon the public roads and highways at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface and width of the road or highway and of any other conditions then existing, and no person shall drive any motor vehicle in and upon any public road or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead.''

It is contended by plaintiff in error that this statute

was passed for the benefit of those lawfully upon the highway. The statute does not so read. It is general in its terms, and general in its application.

The Supreme Court has spoken in unmistakable terms in construing this section in two cases, *Skinner* v. *Pennsylvania Rd. Co.*, 127 Ohio St., page 69, 186 N. E., 722, and *Gumley, Admr.*, v. *Cowman*, 129 Ohio St., page 36, 193 N. E., 627. The syllabus in the *Skinner case* is as follows:

"The language of Section 12603, General Code, providing that no person shall drive any motor vehicle in and upon any public road or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead, is a specific requirement of law, a violation of which constitutes negligence *per se*."

In the *Gumley case* the first branch of the syllabus is substantially verbatim with that of the syllabus in the *Skinner case*, and the second branch of the syllabus is as follows:

"The present legislative requirement establishes a subjective test whereby a driver is prohibited from operating any motor vehicle in and upon any public road or highway at a rate of speed greater than will permit him to bring it to a stop within the distance at which he can see a discernible object obstructing his path."

Counsel in discussing the *Gumley case* call attention to qualifying statements as to the absolute character of this interpretation as found upon page 39 of the opinion, but it will be observed that upon page 40 of the opinion the court specifically sets forth the doctrine announced in the second branch of the syllabus heretofore quoted.

Counsel for plaintiff in error, in arguing that their amended petition states a cause of action entitling them to go to the jury, stress the case of *Transcontinental Car Forwarding Co.* v. *Sladden, Admx.*, 49 Ohio

App., 53, 195 N. E., 256, a decision of the Ninth District Court of Appeals. We do not find ourselves in conflict with the Ninth District, because the record in the *Sladden case* shows that there was evidence that each of the parties to the accident was guilty of a violation of a statutory requirement, the one of parking upon a public highway in the night season without exhibiting thereon the light required by statute, and the other of driving in violation of the assured clear distance provision of Section 12603, General Code. There being evidence to sustain such negligence on the part of both parties to this accident the Ninth District Court of Appeals held that it was a question for the jury to determine what was the proximate cause of the collision.

Reverting to the case of *Gumley, Admr., v. Cowman, supra,* it will be observed that the Supreme Court holds that under this Section 12603 a driver is prohibited from operating any motor vehicle upon any public road or highway at a rate of speed greater than will permit him to bring it to a stop within the distance at which he can see a discernible object obstructing his path.

Certainly, a four foot pier in the center of the highway is a discernible object. We cannot follow counsel in their argument that this discernible object applies to something that may suddenly appear on the highway without warning, and which ordinarily is not there. It would be difficult to conceive of an object more readily discernible than a high pier four feet in width, appearing in the center of a highway, and the Supreme Court, in laying down this absolute rule in the *Gumley case,* has made no distinction between objects.

Even without Section 12603 as a positive enactment, we would be inclined to hold the plaintiff in error, Beal, guilty of negligence under the allegations of his amended petition. One driving upon such a night upon

a highway was put upon his guard, and a reasonably prudent driver does operate his automobile at such a rate of speed as would enable him to bring it to a stop within the limit of the distance which he can see at any given time. If his line of vision is limited to 100 feet, he will so drive his car that he will bring it to a stop within 100 feet. All drivers of automobiles are familiar with conditions of very little visibility, of dense fog, and of occasional snow storms. One cannot assume that his line of travel will be a straight line.

That one should drive his automobile upon such a highway, gradually widening, as he says, so that there was a roadway 18 feet in width to the right of the pier, and under such conditions of weather as he describes, and should hit this obstruction in the center of the highway, seems to us to admit of no conclusion other than that the negligence of the driver, himself, was the proximate cause of the accident. His failure to conform to the statutory requirement, and to what we regard as the rule of reason in driving automobiles, under such conditions as existed at the time of this accident, seems to us to show him guilty of such negligence as to prevent a recovery, and, hence, the Court of Common Pleas committed no error in sustaining this motion and its judgment should be affirmed.

*Judgment affirmed.*

LEMERT, P. J., and SHERICK, J., concur.