Ernest Ellison Auditor General Tallahassee
QUESTIONS:
1. With reference to the 80 percent and the 20 percent portions of the surplus second gas tax, under the Constitution and Ch. 77-165, Laws of Florida, may a board of county commissioners budget, appropriate, and expend such tax revenues for the repair and maintenance of existing roads and bridges, having in mind particularly the provisions of s. 336.41(3), F. S., as amended and enacted by s. 11 of Ch. 77-165, Laws of Florida?
2. May such revenues be used for `overhead' costs of the county identifiable as relating exclusively to a specific county road and bridge project, including costs paid by the county out of the county transportation trust fund, such as for county supplies and equipment (including bulldozers rented by the county and lubricants therefor), county administrative personnel (including secretaries employed temporarily), county buildings to house them (including mobile filed offices rented by the county, temporary sheds, etc.), utilities payable by the county (including those used on site), etc.?
3. May the county use such revenue funds for `overhead' costs of the county not identifiable as relating exclusively to a specific county road and bridge project but rather incurred generally both for that project and also as to one or more other county projects, or the overall county road and bridge program, including costs payable by the county out of the county transportation trust fund such as for county supplies and equipment (including county-owned bulldozers and lubricants therefor), county administrative personnel (including a permanently employed county engineer), county buildings to house them (including the county road department headquarters building), utilities payable by the county (including those used in the county road department headquarters building), etc.?
4. Insofar as some portion of the 80 percent or 20 percent portions of the surplus second gas tax may be used and budgeted and expended by the county for such `overhead' costs, for specific county projects, or for the general county road and bridge program, or both, then what formula should be applied to apportion such `overhead' costs as may be required respectively among the various sources of funds in the county transportation trust fund for all transportation related revenues and expenditures, including the 80 percent and 20 percent portion of the surplus second gas tax revenues?
5. What limitations, if any, does s. 9 of Ch. 77-165, supra, place upon the use of the proceeds of the surplus from the second gas tax?
6. As to `overhead' costs referred to above, what different answer, if any, is required as to funds other than the surplus second gas tax revenues in the county transportation trust fund?
SUMMARY:
The use by the counties of surplus second gas tax funds is limited by s. 9(c)(5), Art. XII of the State Const., and s. 206.47(7), F. S., to the `construction of roads,' including bridges, and such second gas tax revenues may not be lawfully used for the maintenance and repair of existing roads and bridges.
Section 9 of Ch. 77-165, Laws of Florida, does not place any limitations upon the use of the surplus second gas tax funds and does not alter the provisions of s. 9(c)(5), Art. XII, State Const., and s. 206.47(7), F. S., which limit the use of the surplus second gas tax revenues to `construction of roads' within the county road system.
Although all funds received by a county for transportation are deposited in the transportation trust fund, only the expenditure of the surplus second gas tax is controlled by s. 9(c)(5), Art. XII, State Const., and s. 206.47(7), F. S. To the extent those funds deposited into the transportation trust fund, other than the second gas tax revenues, are authorized by statute to be used for those `overhead' costs described in questions 2 and 3, such use by a county would be proper.
Your inquiry indicates that your questions have arisen in connection with your auditing duties under s. 11.45, F. S. 1977, and s. 14 of Ch. 77-165, Laws of Florida (codified as s. 339.083, F. S.). Section 11.45 has been amended by Ch. 79-183, Laws of Florida, with respect to your auditing duties in relation to the counties and local governmental entities, effective October 1, 1979. Section 339.083 F. S. 1977 (s. 14, Ch. 77-165, Laws of Florida), has not been amended since its enactment.
You state in your letter that you are aware that so-called `county overhead costs' will be incurred by the county in connection with road projects not only as to force account work — i.e., a project utilizing existing county forces in the construction of a public road — but also, although to a lesser extent, as to road work let on contract. You advise that you are in doubt as to the permissible scope of expenditure of second gas tax funds in light of the 1977 statutory amendments (Ch. 77-165, supra) to the statutory provisions applicable to the questions you have posed, which relate specifically to repair and maintenance of existing roads and bridges and so-called county `overhead' costs in connection with specific county road and bridge projects and the general or overall county road and bridge program.
This response, therefore, is limited to the applicable and pertinent constitutional and 1977 statutory provisions and to the permissible appropriation, use, and expenditure of the surplus second gas tax revenues for `overhead costs' by boards of county commissioners on any specific county road and bridge project and the expenditure for `overhead costs' by the boards of county commissioners for the overall county road and bridge program which includes numerous road and bridge projects, when such road and bridge work is done in part by the county in conjunction with work let on contract to a private contractor. The second gas tax was originally levied by s. 16, Art. IX of the Constitution of 1885, as amended. See s. 206.41(4)(b), F. S. Section 16(c), Art. IX, insofar as material to your inquiry, provided in pertinent part that:
 [A]ny remaining balance out of the proceeds [of the second gas tax] . . . shall monthly during the year be remitted . . . as follows: Eighty (80%) per cent [sic] to the State Road Department for the construction . . . of state roads and bridges within the county . . . and twenty (20%) per cent [sic] to the Board of County Commissioners of such county for use on roads and bridges therein.
The second gas tax, as levied by s. 16, Art. IX of the Constitution of 1885, was continued by s. 9(c), Art. XII of the 1968 Revision of the State Constitution. Section 206.41(4)(b), F. S., and s. 9(c)(1), Art. XII, id. Insofar as material to this opinion, s. 9(c)(5) of the 1968 Revision requires the proceeds of the second gas tax to be remitted for use in each county,
 [E]ighty per cent [sic] to the state agency supervising the state road system and twenty per cent [sic] to the governing body of the county. . . . The proceeds of the `second gas tax' subject to allocation to the several counties under this paragraph (5) shall be used . . . for the . . . construction of roads. . . . (Emphasis supplied.)
The percentage allocated to the county may be increased by general law.
Section 206.47(7), F. S., also limits the distribution, use, and expenditure of the surplus second gas tax funds to `the . . . construction of roads' providing in pertinent part:
 The remaining gas tax funds . . . are surplus gas tax funds and shall be divided, 80 percent to the Department of Transportation and 20 percent to the board of county commissioners of the county for the . . . construction of roads. . . . (Emphasis supplied.)
Section 339.083, F. S., brought into the statutes by s. 14 of Ch. 77-165, Laws of Florida, in pertinent part provides that the Auditor General shall audit each county transportation trust fund to assure that the surplus of the second gas tax distributed to each county is being expended in accordance with law, to see that no such expenditure is violative of the constitutional or statutory requirements for the expenditure of such transportation funds, and to immediately notify an affected county of any violations. Section 11.45, F. S., in pertinent part, requires the Auditor General to postaudit the accounts and records of the several boards of county commissioners.
AS TO QUESTION 1:
Question 1 concerns whether the repair and maintenance of existing roads and bridges, having in mind particularly the provisions of s. 336.41(3), F. S., fall within the constitutionally and statutorily permissible scope of the use and expenditure of surplus second gas tax funds by a board of county commissioners.
I recently concluded, inter alia, in AGO 079-43 that `[i]n the sense the word `construction' is used in s. 9(c)(5), Art. XII, State Const., and in s. 206.47(7), F. S., the term means the creation or building of new roads [including bridges] and does not encompass . . . repair, or improvement of existing roads.' (Emphasis supplied.) Although that opinion did not pass upon any questions arising under s. 336.41, F. S., the construction placed upon s. 9(c)(5), Art. XII, and s. 206.47(7), F. S., and the rationale of the opinion apply with equal effect to question 1 relating to the repair and maintenance of existing roads and bridges under the cited constitutional and 1977 statutory provisions.
Section 336.41, F. S., as amended by s. 11 of Ch. 77-165, Laws of Florida, authorizes the county commissioners to employ labor and provide equipment as may be necessary for constructing and opening of new roads and bridges and repair and maintenance of any existing roads and bridges, except as provided in subsection (3) of the section. Section 336.41(3), as amended by Ch. 77-165, provides:
 (3) All construction and reconstruction of roads and bridges, including resurfacing, full scale mineral seal coating, and major bridge and bridge system repairs, to be performed utilizing the proceeds of the 80 percent portion of the surplus of the second gas tax shall be let to contract to the lowest responsible bidder by competitive bid, except for;
(a) Construction and maintenance in emergency situations; and
 (b) In addition to emergency work, construction and reconstruction, including resurfacing, mineral seal coating, and bridge repairs, having a total cumulative annual value not to exceed 5 percent of its 80 percent portion of the second gas tax or $50,000, whichever is greater,
for which the county may utilize its own forces. However, if, after proper advertising, no bids are received by a county for a specific project, the county may use its own forces to construct the project, notwithstanding the limitation of this subsection. Nothing in this section shall prevent the county from performing routine maintenance as authorized by law.
In construing the provisions of s. 336.41, F. S., in their relationship to s. 9(c)(5), Art. XII of the Constitution, and in their legal effect and operation thereunder, I am obliged to assume the constitutionality vel non of this statute. It is well settled that a law found on the statute books must be presumed to be constitutional until declared unconstitutional by the court.See, e.g., State v. State Board of Equalizers, 94 So. 681 (Fla. 1922), and Evans et ux. v. Hillsborough County, 186 So. 193 (Fla. 1938). I am, of course, not vested with any authority to declare any act of the Legislature unconstitutional, such determinations being the exclusive prerogative of the judicial branch of government under our constitutional scheme of government. However, s. 336.41 neither levies the second gas tax nor prescribes the disposition, distribution, or use of surplus second gas tax revenues. The second gas tax `[i]s levied by Art. IX, Section 16, of the Constitution of 1885, as amended, [and] hereby continued' by s. 9(c)(1), Art. XII of the 1968 Revision of the State Constitution, and, insofar as is material to this opinion, the purposes for which the proceeds of the tax may be used are limited by s. 9(c)(5) to expenditures for the `construction of roads.' Seealso ss. 206.41(4)(b), 206.45(2), and 206.47(7), F. S., and AGO 079-43. Section 336.41(3) is a limitation on the power of the several counties to utilize county employees and equipment for the construction of new roads and bridges and repair and maintenance of existing roads and bridges; the section purports only to require that the specified road and bridge work `to be performed utilizing the proceeds of the 80 percent portion of the surplus of the second gas tax' be let to contract by competitive bid, except in certain enumerated circumstances. Such legislative purpose is not only manifest in the terms of s. 336.41 but is made clear by the title of Ch. 77-165, Laws of Florida, providing that the act was `amending s. 336.41, Florida Statutes; limiting the use of existing county forces in the construction of public roads.' While s. 336.41(3) refers to the `80 percent portion of the surplus of the second gas tax' in terms of the letting of contracts by competitive bids, the disposition, distribution, and use of the second gas tax revenues in the constitutionally prescribed sense and purpose are not mentioned, and that subsection is devoid of any language authorizing any diversion of such tax surpluses to a purpose not particularly authorized by the terms of s. 9(c)(5), Art. XII. Cf. State v. Florida Improvement Commission,34 So.2d 443 (Fla. 1948), wherein the Florida Supreme Court, in passing on the validity of certain revenue bonds issued to finance the construction of a road connecting state highways in Highlands County and a lease-purchase agreement for the long-term lease and construction of such state road within the county under ss. 6 and 16(c), Art. IX of the Constitution of 1885, held that `[a]ny statute enacted, however, if it is to be constitutional, must neither divert the eighty percent gas tax surpluses to a purpose other than a state purpose, nor to purpose or project not particularly authorized by section 16(c), Article IX of the Constitution.' Id. at 450. The court further observed that the Legislature is expressly prohibited `[by the terms of section 16(c)] . . . from changing the method of distribution or thepurposes for which the proceeds may be used' (Emphasis supplied.), and `[u]nder the Constitutional plan the surplus gas tax proceeds . . . cannot be withdrawn from the purpose, and cannot be transferred or shifted by the Legislature to any other state purpose.' Id. at 449, and Palm Beach County v. Green,179 So.2d 356, 361 (Fla. 1965), stating that the purpose of the amendment to the Constitution of 1885 and statute (Ch. 15659, 1931, Laws of Florida, appearing in part as former s. 208.11, F. S.) `was to assist the counties in paying off existing funded debts for road construction and to furnish a stable source of revenue to assist in constructing new facilities, which revenues, if need be, could be anticipated to secure new revenue issues' (Emphasis supplied.);see also State v. Florida State Improvement Commission,34 So.2d 443, 449-450 (Fla. 1948), and Supreme Forest Woodmen Circle v. Hobe Sound Co., 189 So. 249, 250 (Fla. 1939), wherein the court stated that
 [i]t is fundamental that funds raised by taxation for one purpose cannot be diverted to another without legislative authority. It is a violation of official duty in handling public funds for those charged by law with the lawful payment thereof to divert the funds to a purpose contrary to that for which they were raised.
This construction of the terms of the 1885 Constitution, as amended, with regard to the prescribed purposes and projects and uses of the 80 percent gas tax surpluses authorized by s. 16(c) of Article IX, applies with equal force and effect to the provisions of present s. 9(c) of Article XII of the 1968 Revised Constitution. On consideration of the foregoing, and on the assumption that the Legislature did not intend to enact an unconstitutional statute or one in conflict with or transgression of the organic law, I therefore conclude that s. 336.41(3), F. S., does not anywise attempt to regulate the use of or the purposes or projects for which the surplus second gas tax revenues may lawfully be used, or authorized any diversion of such tax proceeds to any purposes not expressly and particularly authorized by s. 9(c), Art. XII.
I have also considered whether s. 336.41, F. S., in any way expressly or impliedly operates to amend or repeal s. 206.47, F. S. In Miami Water Works Local No. 654 v. City of Miami,26 So.2d 194, the Supreme Court, in holding that Ch. 21968, 1943, Laws of Florida (regulating the affairs and activities of labor unions and their members), was not intended by the Legislature to constitute an alteration of the existing city charter so as to require the city to recognize the union as an agency with which it must deal or negotiate concerning the matter of its employees, stated:
 It is an elementary proposition that amendments by implication are not favored and will not be upheld in doubtful cases. Before the courts may declare that one statute amends or repeals another by implication it must appear that the statute later in point of time was intended as a revision of the subject matter of the former, or that there is such a positive and irreconcilable repugnancy between the law as to indicate clearly that the later statute was intended to prescribe the only rule which should govern the case provided for, and that there is no field in which the provisions of the statute first in point of time can operate lawfully without conflict. See Ferguson v. McDonald, 66 Fla. 494, 63 So. 914; Sanders v. Howell, 73 Fla. 563, 74 So. 802; Town of Hallandale v. Broward County Kennel Club, 152 Fla. 266, 10 So.2d 810.
Generally, see also American Bakeries Co. v. Haines City,180 So. 524 (Fla. 1938).
In reading ss. 336.41 and 206.47, F. S., it becomes clear that the former was not intended as a revision of the subject matter of the latter; nor is there such a positive and irreconcilable repugnancy between the two laws as to indicate clearly that s. 336.41 was intended to prescribe the only rule which should govern the case provided for. Further, there is a field in which the provisions of s. 206.47, F. S., can and do operate lawfully without conflict with s. 336.41, F. S. As indicated above, the two statutes deal with different subjects; s. 206.47 prescribes the disposition, distribution, and use of the surplus second gas tax revenues, whereas s. 336.41 limits the use of existing county forces in the construction of county roads. Thus, there is no irreconcilable conflict between these laws. I can find no evidence from a study of s. 336.41, and the legislative history thereof, that the Legislature intended to abrogate, repeal, or modify the scheme for the disposition, distribution, and use of the surplus second gas tax revenue as laid out in s. 206.47 or to engraft thereon new conditions entirely foreign to that scheme. Had the lawmaking body intended to accomplish such a purpose in a field so important, there is no reason to believe that it would not have said so in that many words, instead of leaving the matter to speculation and conjecture.
It should be noted that neither s. 9(c), Art. XII of the 1968 Revision of the Constitution, nor s. 206.47(7), F. S., makes any mention of activities or purposes which would represent the `repair and maintenance of existing roads and bridges.' Rather, those provisions, insofar as material to this opinion, refer only to the `construction of roads.' Words used in constitutional provisions, unless they are technical, should be given the meaning accorded them in common usage, or their most usual and obvious meaning, unless a different connotation is expressed in or necessarily implied from the context of the constitutional provision in which they appear. Gaulden v. Kirk, 47 So.2d 567; City of Jacksonville v. Glidden, 169 So. 216; and State v. Butler, 69 So. 771. Cf. State v. Florida State Improvement Commission,47 So.2d 627, 630 (Fla. 1950). This principle also applies to the construction of statutory provisions. Pedersen v. Green,105 So.2d 1 (Fla. 1958). But, as stated in City of Jacksonville v. Continental Can Co., 151 So. 488 (Fla. 1933), constitutional provisions are presumed to have been more carefully and deliberately framed than is the case with statutes, id. at 489, and constitutions import the utmost discrimination in the use of language, that which the words declare is the meaning of the instrument. Id. at 490.
Black's Law Dictionary (4th Rev. ed.) at 386 defines the term `construction' to mean, among other things, `the creation of something new, as distinguished from the repair or improvement of something already existing'; and 16A C.J.S., p. 1234, defines the term to mean `the building or erection of something which theretofore did not exist, the creation of something new rather than the repair of something already existing.' See also Board of Sup'rs of Covington County v. State Highway Commission,194 So. 743, in which the Mississippi court states that the word `construction' in its ordinary sense means to build or erect something which theretofore did not exist.
In Webster's New World Dictionary of the American Language (1970) at 1204, `repair' is defined as `to put back in good condition after damage, decay; to renew; restore; revive.' At 854, `maintain' is defined as `to keep or keep up; continue in or with; to keep in a certain condition or position, esp. of efficiency, good repair, etc; preserve.'
Generally speaking, the word `maintain' does not mean to construct, install, or provide for. Barber Asphalt-Pav. Co. v. Hezel, 56 S.W. 449 (Mo. 1900); State v. Olympia Light and Power Co., 158 P.85 (Wash. 1916); and Beal v. Erie R. Co., 1 N.E.2d 328
(Ohio 1935). See 26 Words and Phrases `maintain' pp. 79-83. Likewise, the word `repair' does not generally mean to construct or build a new or additional structure. See 36A Words and Phrases
`repair' at 750 and 759. `Repair,' furthermore, does not generally mean to completely rebuild or reconstruct existing structures or to reconstruct structures that have been destroyed, although it does contemplate the rebuilding or reconstruction of component parts of decayed or depreciated structures in the sense of renewing, restoring, or refitting if such does not amount to a total or practically complete rebuilding or reconstruction or change in identify of same. Id. at 761-766. Of course, lost, decayed, or destroyed parts or portions of machinery or structures may be replaced. Id. at 763, 770-771.
The term `repair and maintenance' discloses, in my opinion, its use in the context of the general definitions provided above,i.e., to keep, preserve, refit, restore, or renew something already in existence as opposed to constructing, installing, or providing for something not in existence or renewing or restoring something so completely as to amount to its reconstruction. Thus, in line with the principle that words of common usage, when used in a statute, should be construed in their plain and ordinary signification and not in a technical sense unless clearly used in a technical manner, supra, the term `repair and maintenance' as applied to existing roads and bridges does not fall within the purview of the constitutional term `construction of roads.'
Accordingly, I am compelled to conclude that s. 9(c)(5), Art. XII of the State Constitution authorizes the use of second gas tax funds only for the construction of capital projects, i.e., the building of new facilities or roads. Thus, surplus second gas tax funds may not lawfully be used to repair and maintain existing roads and bridges. Cf. s. 206.60(2)(b)1., F. S., providing in pertinent part that the several boards of county commissioners shall use the proceeds of the additional seventh cent gas tax solely for, inter alia, `the construction . . . operation,maintenance, and repair of transportation facilities, roads, and bridges (in the counties) . . . .' (Emphasis supplied.) Neither. s. 9(c), Art. VII, nor s. 206.47(7), F. S., contains any such provision for the use of surplus second gas tax moneys as those immediately preceding italicized terms. Cf. s. 336.021, F. S., providing in pertinent part a county may, subject to a referendum, impose an additional 1-cent tax upon every gallon of motor fuel and special fuel sold in the county for the purpose of paying the expenses of, inter alia, the construction and maintenance of roads
and streets. It should be noted that state courts have traditionally considered a bridge and its approaches to be a part of a road. Pirman v. Florida State Improvement Commission,78 So.2d 718 (Fla. 1955), holding that former s. 341.09, F. S., defining the term `road' to mean and include, among other things, a bridge `is simply declaratory of what has always been considered to be a road or a part of a road.'
AS TO QUESTIONS 2 AND 3:
Questions 2 and 3 concern whether `overhead' costs of the county identifiable as relating exclusively to a specific county road and bridge project or to one or more other county projects or the overall county road and bridge program fall within the permissible scope of expenditure of the surplus second gas tax funds.
Section 9(c)(5), Art. XII, State Const., and s. 206.47(7), F. S., make no reference to `overhead' costs but restrict the use of the second gas tax funds to the `construction of roads.' The use of the terminology `construction of roads' indicates an intent to limit the surplus second gas tax funds to fixed capital outlays or expenditures for long-term capital improvements rather than short-term expenditures, operating capital outlays, or other operational expenses. See AGO 079-43.
Under the well-established principle of expressio unius estexclusio alterius, the express mention of one or more things implies the exclusion of all others, and when the Constitution or a statute expressly enumerates the things upon which it is to operate, it is to be construed as excluding from its operation all things not expressly mentioned. Ideal Farms Drainage Dist. v. Certain Lands, 19 So.2d 234 (Fla. 1944); Interlachen Lakes Estates, Inc. v. Snyder, 304 So.2d 433 (Fla. 1973); and In Re
Advisory Opinion of Governor Civil Rights, 306 So.2d 520 (Fla. 1975).
Thus, the construction of capital projects such as roads and bridges as contemplated by s. 9(c)(5), Art. XII, State Const., and s. 206.47(7), F. S., does not include the purchase or rental by the county of road equipment or buildings, including mobile field offices and temporary structures to house county personnel or equipment, which expenditures are properly characterized as operating capital outlays. Nor would the construction of capital projects contemplated by s. 9(c)(5), Art. XII, and s. 206.47(7) include administrative expenses and salaries of county personnel; costs of lubricants, utilities, or supplies used by the county; costs attributable to the employment of the county engineer or his staff; the expenses of funding and staffing the county road department or its headquarters building; or any other county administrative activities or expenses, all of which are properly characterized as operating expenses.
It should also be noted that s. 339.083(1), F. S., prohibits expenditures from the county transportation trust fund other than transaction expenditures authorized by law. There is no constitutional or statutory authority to expend second gas tax funds for operating capital outlays or operating expenses such as those described in questions 2 and 3.
The provisions of s. 206.47(10), F. S., should not be construed to allow the expenditure of surplus second gas tax funds on such fixed or operating capital outlays and current operational expenses or `overhead costs.' Section 206.47(10) originally enacted by Ch. 69-304, Laws of Florida, following adoption of the Revised Constitution of 1968, provides for distribution of the remaining 20 percent surplus gas tax funds to the board of county commissioners `for use in the county.' However, s. 9(c)(5) of Art. VII of the Revised Constitution of 1968 specifies that the proceeds of the second gas tax subject to allocation to the several counties under s. 9(c)(5) shall be used, among other things, for `the . . . construction of roads' (including bridges). Thus, in order to bring that statute in conformance or harmony with the constitutional provision and preserve its constitutionality, I am constrained to construe s. 206.47(10) to mean that the remaining 20 percent surplus gas tax funds be `use[d] in the county' for `the . . . construction of roads' as limited and prescribed by s. 9(c)(5), Art. XII. Cf. s. 206.47(7), providing in pertinent part `20 percent to the (county commission) for `the . . . construction of roads." See AGO 079-43.
Therefore, unless and until judicially determined to the contrary, I am compelled to conclude that the surplus second gas tax funds may not be used to defray the costs of fixed capital outlays or operating outlays or expenses of operation delineated in questions 2 and 3.
AS TO QUESTION 4:
In view of my response to questions 2 and 3, question 4 requires no response.
AS TO QUESTION 5:
Question 2 of your opinion request concerns the limitations, if any, that s. 9 of Ch. 77-165, Laws of Florida, places upon the use of the proceeds of the surplus from the second gas tax. My answer to this question is implicit in my answer to your first question. When Ch. 77-165, Laws of Florida, is read with s. 9(c)(5), Art. XII, State Const., and s. 206.47(7), F. S., it becomes clear that the surplus second gas tax is governed by, and subject to, the same limitations and prohibitions delineated in my answer to question 1. Further, it becomes clear that the Legislature intended to assure that the surplus second gas tax revenues be used for the `construction of roads' relating to the `county road system' as that term is defined in s. 334.03(23), F. S. Surplus second gas tax moneys cannot be properly expended for the construction of any other roads.
AS TO QUESTION 6:
Your last question concerns whether my answer to question 1 would be different as to the expenditure of funds in the county transportation trust fund (other than the surplus second gas tax revenue) for county `overhead' costs.
Section 14 of Ch. 77-165, Laws of Florida, now codified as s. 339.083, F. S., requires each county to establish and maintain a transportation trust fund for all transportation related revenues and expenditures. All funds received by a county for transportation shall be deposited into this fund.
Section 129.01, F. S., establishes a budget system for the control of the finances of the boards of county commissions of the several counties of the state and specifically provides for a county transportation trust fund under s. 129.01(1)(b).
Although all funds received by a county for transportation are deposited in the transportation trust fund, including the second gas tax, the additional seventh cent gas tax levied by s. 206.60, F. S., the discretionary 1-cent tax authorized by s. 336.021, F. S., and the ad valorem tax provided by s. 336.59, F. S., only the expenditure of the surplus second gas tax is controlled by s. 9(c)(5), Art. XII, State Const., and s. 206.47, F. S.
As to those funds deposited into the transportation trust fund, other than the second gas tax, the use of the additional seventh cent tax funds is prescribed by s. 206.60, F. S., which provides that the county commissioners shall use these funds solely for `the acquisition of rights-of-way; the construction, reconstruction, operation, maintenance, and repair of transportation facilities, roads and bridges therein . . . .' (Emphasis supplied.)
Further, the discretionary 1-cent tax authorized by s. 336.021, F. S., is to be used `for the purpose of paying the costs and expenses of establishing, operating and maintaining a transportation system and related facilities and the cost of acquisition, construction, reconstruction, and maintenance of roads and streets.' (Emphasis supplied.)
Also, the ad valorem tax provided by s. 336.59, F. S., is to be expended for `work on the public roads and bridges in the county, and for the payment of the salaries of employees engaged in roadand bridge work, and in providing the necessary tools, materials,implements and equipment and for the necessary work on such roads and bridges.' (Emphasis supplied.)
Thus, to the extent the funds deposited into the transportation trust fund, other than the second gas tax revenues, are authorized by statute to be used for those `overhead' costs delineated in question 2 and 3, such use by a county would be proper.
In summary, therefore, and based on the foregoing analysis and constitutional and 1977 statutory provisions, it is my opinion that the use by the counties of surplus second gas tax funds is limited by s. 9(c)(5), Art. XII of the State Const., and s.206.47(7), F. S., to the `construction of roads,' including bridges, and such second gas revenues may not be lawfully used for the maintenance and repair of existing roads and bridges.
Section 9 of Ch. 77-165, Laws of Florida, does not place any limitations upon the use of the surplus second gas tax funds and does not alter the provisions of s. 9(c)(5), Art. XII, State Const., and s. 206.47(7), F. S., which limit the use of the surplus second gas tax revenues to the `construction of roads' within the county road system.
Although all funds received by a county for transportation are deposited in the transportation trust fund, only the expenditure of the surplus second gas tax is controlled by s. 9(c)(5), Art. XII, State Const., and s. 206.47(7), F. S. To the extent those funds deposited into the transportation trust fund, other than the second gas tax revenues, are authorized by statute to be used for those `overhead' costs described in questions 2 and 3, such use by a county would be proper.
Prepared by:
Maxie Broome, Jr., and Cecil L. Davis, Jr. Assistant Attorneys General